[No. 367. Decided April 7, 1892.]

JAMES A. WHITE, *as guardian of Joseph T. Nickerson, Respondent*, v. JOHN P. JOHNSON, ANDREW R. JOHNSON AND PETER NELSON, *Appellants*.

CONVEYANCE—CONSIDERATION—UNDUE INFLUENCE.

Where a conveyance of lands has been given in consideration that the family of the grantee should reside thereon as neighbors to the grantor, the conveyance will be upheld, although the grantor was an old man, easily influenced by little attentions and acts of kindness, and in spite of the fact that a more intimate acquaintance disturbed their congeniality, or that they had trouble over some subsequent transaction.

Where a man nearly seventy years of age, freehearted and confiding and easily imposed on by those in whom he had confidence, conveyed away his last acre of land to a grantee whom he trusted, without receiving a dollar in money, taking only the grantee's word that he would pay his debts, which were less than the value of the land, and conveyed all his personal property to the father of such grantee on his naked promise to take care of him the balance of his days, the presumption is that the transaction was tainted with fraud and that the deed and transfer were procured by undue influence.

*Appeal from Superior Court, Jefferson County.*

The facts are stated in the opinion.

*Ballinger & Ballinger*, for appellants.
*John Trumbull*, and *A. R. Coleman*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This action is brought by James A. White, as the guardian of Joseph T. Nickerson, to cancel and set aside certain conveyances made by said Nickerson to appellants John P. Johnson and Andrew R. Johnson, and appellant Peter Nelson is joined as a defendant in the action as an alleged grantee of the said Andrew R. Johnson, charged with notice of plaintiff's equities. The court be-

low entered judgment in substantial compliance with the prayer of the complaint, and defendants appealed to this court. After a patient examination of a record of over four hundred pages, which comes here in pen written form, we have been able to extract the following facts, viz.: On the 11th day of December, 1888, the plaintiff, Joseph Nickerson, was the owner of one hundred and twenty acres of land, described in the complaint, and had owned the land for many years prior thereto. That on the said 11th day of December, 1888, he deeded, for the expressed consideration of one dollar, forty acres of said land to defendant John P. Johnson; and that on the 19th day of August, 1889, he deeded the remaining eighty acres to defendant Andrew R. Johnson, a son of John P. Johnson, for an expressed consideration of five hundred dollars, though the actual consideration was the verbal promise of said Andrew R. Johnson to pay Nickerson's debts, roughly estimated at five hundred dollars; and at the time of the last conveyance plaintiff also conveyed to John P. Johnson thirteen head of cattle, for an expressed consideration of one hundred dollars, although it is admitted by defendant John P. Johnson that no money consideration was paid, and that said land and cattle were all the property the plaintiff owned. That at the time of such conveyance the plaintiff was over sixty-eight years of age, and that the amount of money actually paid out by Andrew R. Johnson in liquidation of the debts of the plaintiff was four hundred and ten dollars.

This case presents anew the old story of trouble arising from this character of contracts; and while courts of equity should be quick to respond to the appeals of the old, the infirm and the incompetent for protection against the wiles of designing men who seek by overreaching methods to profit and thrive at the expense of waning intellects and confiding old age, yet the investigation of such cases must

be conducted with extreme caution, especially in this west-
ern country where lands rise so rapidly in value, and where
the temptation is very great to attempt to annul and avoid
contracts and sales that were made in perfect good faith
and with a perfect understanding of the conditions as they
existed at the time of the sale.   And especially should
great caution be exercised in a case of this kind where the
action is brought by a relative who will presumably be a
beneficiary of the estate, and whose affectionate solicitude
for his aged relative remained perfectly dormant during
the period of his poverty, and seemed to require the quick-
ening power of multiplied values to cause it to assert itself;
for it will be observed that the first conveyance to Johnson
was made December 11, 1888, and that no effort was made
by the guardian in Nickerson's behalf until May 17, 1890,
nearly a year and a half after the first conveyance com-
plained of, and nine months after the last conveyance.
Hence we say that under the particular circumstances of
this case, as they appear by the record, the facts constitut-
ing the alleged fraud should be carefully scrutinized by
the court.   The plaintiff was an old man, nearly seventy
years old, and had lived on his claim a great portion of his
life, and, according to all the testimony, was a man who
was easily influenced by little attentions and acts of kind-
ness, was liberal, freehearted and confiding and easily im-
posed upon by those in whom he had confidence.   But
from all the circumstances of the case we are unable to
find any testimony showing that any fraud was perpetrated
upon him by John P. Johnson, or that he was unduly in-
fluenced by Johnson, or any one else, in the forty acre
transaction.   It is true that he regarded Johnson as his
friend, and that he evidently was much attached to his
family, but there is no testimony even tending to show
that Johnson took advantage of this friendship to over-
reach him.   On the contrary, the undisputed testimony

shows that his offer to deed Johnson forty acres in consideration of Johnson's moving out there with his family was made freely and voluntarily, and that it was time and again declined, and that it was many times and during the course of many months persistently offered and urged, Johnson evidently thinking that the inducement was not sufficient to warrant him in building in that out of the way place and moving his family there, there being no roads or schools in the vicinity. This objection to settling there on the part of Johnson seems to have been well understood by Nickerson, for in July, six months after he had made the first offer to Johnson, he wrote to Mrs. Johnson, who had moved back to Wisconsin, after the offer had been made and refused, that they now had a road established, and that they would soon have a schoolhouse, and again urged them to accept a deed to the land, stating that he would also write to the same effect to Mr. Johnson, and expressing his opinion that they could not do better than to accept his offer. The old gentleman was probably a little too enthusiastic and may have overestimated the benefits which would flow from their settlement near him, but he was plainly anxious to give forty acres of his land for the sake of having a family that he was attached to and with whom he expected to enjoy pleasant social intercourse settle in his lonely neighborhood, and there is no hint of any other consideration in any of his correspondence. So far as the testimony shows, Johnson accepted the proposition in good faith and complied with his agreement, and ought not now to be disturbed in his possession because a more intimate acquaintance disturbed their congeniality, or because they have had trouble over some subsequent transaction.

But we cannot say so much for the innocence or good faith of the last transaction. As the lands in that locality began to be valuable, the Johnsons evidently began to

covet the balance of Nickerson's possessions.   By this time
it seems that John P. Johnson was the man whom Nicker-
son relied upon for advice and counsel in all his business
relations, and all the circumstances surrounding the trans-
action show that an undue advantage was taken of the
respondent, and that the consideration was entirely inade-
quate.   In fact, it may be truthfully said that there was
no consideration at all, and that the extreme one-sidedness
of the transaction raises such a strong presumption either
of undue influence or of incompetency that it requires the
most clear and explicit evidence to rebut it.   Here we find
a man nearly seventy years old deeding away his last acre
of land without receiving a dollar in money, and taking
only the word of his grantee that he would pay his debts,
presumably aggregating five hundred dollars, and the tes-
timony without doubt shows that the land at that time was
worth much more than that sum and steadily increasing in
value; deeding away the last vestige of his personal prop-
erty on the naked promise of a man to take care of him
the balance of his days, without any security whatever,
that the conditions of either one of the contracts would be
complied with, or without any legal assurance that he
would not on the next day be left penniless and homeless.
When a strong, competent man makes a contract of this
kind with a man concerning whose mental capacity there
is any question (and he is not liable to make such a con-
tract with any other kind of a man), it is not too much for
a court of equity to place the burden upon him to clearly
show that the transaction was not tainted with fraud.
That presumption in our judgment has not been rebutted
in this case.   On the other hand, we think it affirmatively
appears from all the circumstances that the sale was pro-
cured by undue influence, and therefore ought to be set
aside.   We think there is nothing in the objections urged
by the appellants to the legal proceedings.

The judgment of the lower court will be so modified that that part of the prayer of the petitioner asking that the deed to John P. Johnson be declared null and void and canceled be denied, and, as so modified, it is affirmed.

Anders, C. J., and Stiles, Scott and Hoyt, JJ., concur.