J. C. LEWIS, Appellee, v. J. C. WILCOX and STELLA WIL-
COX, Appellants.

**Conveyances:** CANCELLATION: AGREEMENT FOR SUPPORT: EVIDENCE.
1  In an action to set aside a conveyance of property in con-
sideration of an agreement to support and care for the grantor
and his wife, on the ground that the grantee had failed to per-
form his agreement, it was held on a review of the evidence
that a cancellation of the conveyance should not be decreed.

**Fraudulent conveyances:** EVIDENCE. On an issue of fraud in pro-
2  curing a conveyance of property in consideration for future
support, the evidence is reviewed and held insufficient to es-
tablish fraud.

*Appeal from Warren District Court.*— HON. J. D. GAMBLE,
Judge.

THURSDAY, JULY 12, 1906.

THE opinion states the case.— *Reversed.*

*L. Kinkead,* for appellants.

*Henderson & Henderson,* for appellee.

WEAVER, J.— For many years prior to October, 1902,
the plaintiff had been the owner of a forty-acre tract of land
in Warren county, Iowa, occupied by himself and wife as
a homestead.  Being childless, they took into their family
the defendant John C. Wilcox who lived with them until
after he reached his majority and married his codefendant
Stella Wilcox.  After the marriage the defendants contin-
ued for a time to live with the plaintiff; but, the forty-acre
tract not appearing to afford support for two families, the

young people moved to another neighborhood and set up a home for themselves. Plaintiff and wife and the defendants continued to maintain amicable relations, frequently visiting each other. With passing years and increasing age the old people found increased difficulty in getting along and properly caring for themselves. During the summer of 1902 the health of plaintiff's wife failed, and much of the time she was confined to her bed and her care devolved largely upon her husband, who was unable, during some of the time at least, to hire assistance. More or less friendly aid was rendered by their neighbors, and quite frequently the defendants, who were then living some twenty miles distant, drove to the old home and gave to their foster parents such help as they could. For a considerable period Mrs. Wilcox attended to the plaintiff's family washing, taking the clothes to her own home for that purpose. On the occasion of some of the defendant's visits at the home of plaintiff the parties discussed the advisability of an arrangement by which the property should be transferred or in some manner secured to the defendants, in consideration of their taking care of plaintiff and his wife during the remainder of their lives. Finally on October 7, 1902, they called in a justice of the peace, one Yount, who, with the aid of a book of forms, prepared an instrument in the following terms which was signed by the plaintiff and wife:

Know all men by these presents, that we, J. C. Lewis and Nancy Lewis, his wife, are held and firmly bound unto J. C. Wilcox in the penal sum of three thousand ($3,000) dollars to the payment whereof well and truly to be made and done we bind ourselves firmly by these presents providing the second party fulfills a certain contract or lease made and entered into by said parties. Then said J. C. Lewis and Nancy Lewis to be bound in said sum of three thousand dollars to make a good and lawful title to northwest ¼ of northeast ¼ Sec. 27, Twp. 77, N., range 24, also S. W. ½ a. south 2

southeast Sect. 22, Twp. 77, N., range 24.   This 7th day of October, 1902.

J. C. Lewis.
her
Nancy X Lewis.
mark

Attest:
    Will White.
    Henry Howery.
Signed this 7th day of October, 1902.

E. J. Yount, J. P.

Whether any other writing was executed at the sam time is a subject of dispute between the parties.   This paper was not satisfactory to the defendants, who took it to Mr. Connolly, a lawyer in Des Moines, who advised them that anything less than a conveyance of the title was liable to be productive of litigation after plaintiff's death.   At the request of defendants the lawyer prepared a warranty deed for the conveyance of the land from plaintiff and wife to the defendants J. C. Wilcox and wife stating the consideration therefor to be " the sum of $50 per year and the board of the said J. C. Lewis and Nancy Lewis during their natural life and give them each a respectable burial."   He also, at the same time, prepared a form of contract which, except the sentence, " This agreement is to take effect from and after the signing hereof," was in the following words:

This agreement, made and entered into by and between J. C. Lewis and Nancy Lewis, of Warren county, Iowa, of the first part and J. C. Wilcox of the said county and state of Iowa, of the second part, witnesseth:   That the said party of the first part has this day sold unto the party of the second part the following described real estate situated in the county of Warren and state of Iowa, to wit:   The northwest quarter (¼) of the northeast quarter (¼) of section twenty-seven (27), township seventy-seven (77), north of range twenty-four (24) ; also southwest one-half (½) acre south one-half (½) southeast twenty-two (22), township seventy-seven

(77), north of range twenty-four (24) — all west of the fifth
P. M., Iowa. And said parties of the first part hereby agree
to dispose of all of their property as soon as they can with the
exception of what they will use in a bedroom; one horse,
harness, and buggy, and one cow, and to give the said parties
of the second part the possession of the premises on or be-
fore the first day of November, 1902. In consideration of
which the said party of the second part has agreed to furnish
to parties of the first part fifty ($50.00) dollars per year in
advance and to board him and his wife during their natural
lives. To take care of them as such boarders and to give
them and each of them a respectable burial. It is hereby ex-
pressly agreed and stipulated by and between the parties
hereto that if the said J. C. Lewis and Nancy Lewis should
have any property or money in their possession or belonging
to them that the same is to go to the said J. C. Wilcox upon
the death and burial of the said J. C. Lewis and Nancy
Lewis. This agreement is to take effect from and after the
signing hereof.

Signed this 20th day of October A. D. 1902.

J. C. Wilcox.                    J. C. Lewis.
Stella Wilcox.                   Nancy Lewis.

These instruments defendant submitted to the plaintiff.
As a witness on the trial the latter claims that the visit to
Connolly and the procurement of the form of deed and con-
tract was had by defendants without consultation with him
and that the first he knew that the paper drawn by Yount
was not satisfactory was when defendants returned on Oc-
tober 11, 1902, with the paper drawn by Connolly. It ap-
pears, however, a notary was at once sent for and plaintiff
and wife signed and acknowledged the deed. Plaintiff
raised an objection to the contract because, as he thought,
it did not sufficiently specify when the defendants should
assume the responsibility of caring for himself and wife and
he wished the agreement to go into effect immediately.
Thereupon defendants left the deed in plaintiff's possession
until they again visited him on October 20, 1902.

Meanwhile they had procured Connolly to amend the

contract by adding thereto the sentence above quoted and as thus amended it was executed in duplicate by all the parties. This being done the deed was delivered, and very soon thereafter placed on record. Within a few days defendants moved into the house with plaintiff, assuming acttual charge of the home and the care of the old people in accordance with the apparent intent of the contract. The illness of plaintiff's wife continued until her death February 23, 1904. So far as is disclosed by the testimony a reasonable degree of harmony prevailed in the relations of the parties until April, 1904. At that time the defendant J. C. Wilcox, slapped his child for some alleged offense and plaintiff being present remonstrated with some show of indignation, but the matter was passed with a brief exchange of unpleasant words. Later Wilcox undertook to prune the apple trees in the orchard when plaintiff ordered him to desist and again a few angry words were passed. Aside from these two circumstances, and plaintiff does not seem in his testimony to rely on them as matters of any great moment, the record shows no quarrels or controversies between the parties until the commencement of this suit. On the evening after the occurrence in the orchard plaintiff refused to take supper with the family, and early on the following morning left and went to the home of a neighbor. He was afterward visited by the defendant Stella Wilcox who urged him to return to his home, but he refused to do so. About this time he instituted the present action to set aside the deed and contract given to the defendants. As grounds for the relief demanded, he alleges that the oral agreement between the parties was in substance and effect that defendants should move into plaintiff's home, take charge of the property, care for and support plaintiff and his wife during their lives, and pay to them and to the survivor of them a life annuity of $50; and that, in consideration of such services, the said J. C. Wilcox was to become the owner of the land in controversy upon the death of both

plaintiff and wife, but the legal title was to remain in plaintiff as long as he should live. He further alleges that Wilcox undertook to consult a lawyer and have papers properly drawn to express their agreement, and, in pretended compliance with such promise, afterward brought him the deed and contract now in suit and represented them to be in accordance with their said agreement and that he, plaintiff, being unaccustomed to such business and laboring under great anxiety caused by his wife's illness and having full confidence in the defendant, signed the deed and contract believing them to be as represented by defendant, and did not learn that he had, in fact, conveyed away the title to the land until about the time this suit was begun. He further alleges that defendant failed to pay the annuity, and ordered him to leave the place, and has otherwise violated the terms of the agreement. The defendants answer in denial alleging the performance of the contract on their part, and their ability and readiness and willingness to continue in its performance. The trial court found for the plaintiff, canceling the deed and contract, and quieting the title in him as against all claims by the defendant. The defendants appeal.

The case is principally one of fact, and if we could find in the record a fair showing of evidence in support of the claims set up by the plaintiff, we should not hesitate to 1. CONVEYANCES: affirm the decree. Ordinarily where a percancellation: agreement for son has parted with his property in considfuture support: evidence. eration of an agreement for support for life and discord thereafter arises between the parties, as it too often does, courts are disposed to give the grantor the benefit of all reasonable doubt, and restore the property if it can be done without manifest injustice to the grantee; but such contracts are entirely legal and sometimes work to the marked advantage of persons who might otherwise suffer for want of proper care, and they are not to be disregarded or overthrown without good reason therefor. So, too, in the ab-

sence of fraud in the procurement of the contract, the party
who has abandoned another home or other employment to
assume such responsibility, not always an easy one, and has
entered upon, and for a period of years has discharged the
obligations of his contract with reasonable fidelity is not
to be denied fair consideration nor deprived of the benefit
of his contract without legally sufficient cause. The claim
of plaintiff that defendants have refused to perform their
part of the contract has no adequate support in the testi-
mony. At the date of the trial in the district court, two in-
stallments of the annuity had been earned. The first of these
and one-half of the second had been paid in full and the
remaining $25 had been tendered and refused. After taking
possession, and before plaintiff went away from the farm,
defendants had built a barn on the premises and set out an
orchard of three hundred trees. No complaint is made that
defendants were not faithful and attentive in the care of
plaintiff's sick wife, or failed to give her decent and respect-
able burial. There is not a suggestion that they refused or
neglected to give to the plaintiff a comfortable home, suit-
able and sufficient food, or the care and attention which his
age and physical condition demanded. The two little wordy
scraps to which reference has been made are too trivial to
demand serious attention. Plaintiff's statement that one of
the defendants told him to find another boarding place is
uncorroborated, and, taking the proved circumstances as a
whole, we are led to the conclusion that he is mistaken. In
short, so far as the plaintiff's claim is founded on the alleged
refusal by defendants to perform in good faith their part
of the contract, there is an entire failure of proof.

　　This leaves for our consideration only the further claim
or charge that the deed and contract were obtained by fraud
and misrepresentation. In this respect the case made by
2. Fraudulent plaintiff is but little if any stronger than upon
CONVEYANCES: the issue already considered. It is alleged in
evidence.
the petition that while plaintiff's wife united in the execu-

tion of the papers, she was so reduced in body and mind by her illness as to be incapable of comprehending the nature of the transaction. This is not only without substantial support in the testimony, but the contrary is shown with reasonable certainty. So, too, with reference to the plaintiff's own mental condition. He was undoubtedly at that time laboring under considerable anxiety over the condition of his wife and his own increasing helplessness, but he appears to have been possessed of all his faculties and capable of exercising sufficient judgment and discretion to do such business. He is a man able to read and write. He had the deed in his possession for a period of nine days before he finally executed and delivered it. He had, at all times, a duplicate of the typewritten contract in his possession. After becoming acquainted with the contents of the writing as drawn by Connolly, he had but one criticism to make and that was removed by an amendment. A warranty deed is an instrument so common and so familiar to the average man, it is inconceivable that plaintiff could have been deceived into the idea that it had no effect to convey title. As a witness, plaintiff says that he rested upon the theory that the writing made by Yount constituted the contract between them, and that defendants went to Connolly and procured the other papers to be made without consulting him, and, in effect, that the demand for the execution of these papers was sprung upon him so suddenly that he was led to sign them without due understanding. Upon this point not only is the weight of the testimony against him, but his story is inconsistent with his own petition. He there alleges that, as he could not leave his sick wife for the purpose of procuring the papers, it was agreed and understood that Wilcox would procure them to be properly drawn; and that when the latter brought home the deed and contract he submitted them to plaintiff as containing the terms of their agreement. Except the alleged representation that the papers did not have the effect to pass the title during plaintiff's life, there is no

showing of any false or fraudulent statement on defendant's part; and the circumstances under which the delivery was made, and to which we have already referred, sufficiently sustain the defendants' denial on this score.  Moreover the theory of the defendants, that a conveyance was, in fact, intended and agreed upon, is further strongly corroborated by the testimony of the family physician that, during the year 1902, while attending Mrs. Lewis, their dealings with the defendants were the subject of frequent conversation between plaintiffs and himself, and the old people told him they had given their property to Wilcox and the latter was to care for and support them through life.  Other circumstances, which we cannot stop to detail, tend in the same direction.  Reliance is placed by counsel for appellee on the admitted fact that, after this deed had been delivered, Wilcox, accompanied by plaintiff, made application to a third person to borrow some money, and on being asked if he owned any land replied that he would have some if he complied with the conditions of his contract.  This answer is not necessarily inconsistent with the existence of the deed. True he held the legal title, but the deed was accompanied by a contemporaneous contract forming a part of the same transaction and imposing upon him certain duties which constituted an equitable burden or charge upon the property, and to that extent, at least, he was not in position to assert an unqualified ownership.  We have said enough to indicate our conclusion that, upon the vital fact propositions in the case, the finding of the district court cannot be sustained.

The decree appealed from will therefore be reversed, and cause remanded for a decree in harmony with this opinion.  In so doing we suggest to the trial court that it will tend to the preservation of peace if, while the parties and the subject-matter are before the court, judgment shall be entered against the defendants for the unpaid installments of annuity without interests or costs, and the future performance of defendants' contract according to its terms be

expressly declared to be a lien or charge upon the property; and to that end, if the appellee shall ask leave to amend his petition demanding such relief, we recommend that he be allowed to do so.— *Reversed.*