[No. 7457.]

## MARTINEZ v. MARTINEZ.

1. APPEAL AND ERROR—*Harmless Error.* The striking from a pleading of matter which may be proven under other allegations is harmless. (297)

2. EVIDENCE—*Competency.* Action to vacate a conveyance of lands, made upon the consideration that the grantee shall support the grantor. Evidence that the grantor executed the deed of her own volition, that her subsequent dissatisfaction was produced by the efforts of other relatives, and evidence tending to show performance by defendant of his promises, is competent, and its exclusion error. (297)

3. PLEADING—*Certainty.* Every litigation should be founded upon some definite theory, and the complaint should state the facts essential to support such theory. (297)

4. ——*Pleading Fraud.* The facts constituting the fraud must be alleged, in order that the court may determine the character of the transaction. A general allegation of fraud is a mere conclusion. (297)

5. SUPPORT—*Deed Upon Consideration Of.* Failure to perform the stipulation for support is sufficient ground to vacate the deed, without any showing of fraud or undue influence in procuring it. (298)

6. ——*Measure of Proof Required.* To vacate a deed duly executed, clear and convincing evidence is required. The facts relied upon must be established beyond reasonable doubt. (298)

7. ATTORNEY—*Undue Influence upon the Court.* In vacating a decree of the County Court it was noticed that the presiding judge of that court was not a person learned in the law; that the plaintiff's attorney was acting as clerk of the court at the time of the preparation of the voluntary deed which was in question, took the plaintiff's acknowledgment thereof, and probably framed it; and that he did not resign his position, until six days before the trial. The court expressed the fear that the attorney may have exercised an undue influence upon the judge. (299)

*Appeal from Costilla County Court.*—Hon. J. W. McLELLAN, Judge.

Mr. ALBERT L. MOSES, for appellant.

Mr. F. B. WEBSTER, for appellee.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

The object of this suit is to set aside a deed and cancel a contract. Plaintiff below in her complaint alleges that she is old, infirm and wholly unable to read, write, speak or understand the English language, ignorant as to business matters, and unable to understand written instruments; that on October 7, 1908, she owned and possessed a small tract of land upon which she resided with defendant, who was her nephew; that with intent to cheat and defraud her, he wrongfully took advantage of their relationship, and fraudulently persuaded her to execute and deliver to him a quit-claim deed of the premises, reserving therein the following life interest to herself: ''Party of the first part hereby reserves a life interest in the property hereby conveyed, also all rents and profits derived from said property, during the term of her natural life''; that no consideration was paid for the conveyance, but defendant promised plaintiff at the time, that if she would deed him the property, he would keep, maintain, clothe, care for, and treat her with kindness and consideration during the remainder of her life; that from the date of making the deed, he has wholly failed, neglected and refused to fulfill his promises, ejected her from the property, treated her cruelly and unjustly, and she has been obliged to support, maintain, and clothe herself, with the aid and assistance of others, and that defendant has contributed nothing whatever thereto.

The second cause of action states that defendant, with intent to cheat, wrong, and defraud her, took advantage of her age, and their relationship, and induced her to enter into an agreement in writing whereby, in consideration of maintenance, she gave him the use of the tract of land, and a span of work horses, during the remainder of her life; that she has kept all the conditions of the contract, but defendant has wholly failed, neglected and refused to keep the conditions on his part

to be performed, and since the date of its execution, she has been obliged to, and has, with the aid and assistance of others, cared for herself, and he has contributed nothing whatever thereto, wrongfully ousted her from the premises, and continues forcibly to hold possession thereof. She prays to have the deed set aside and the contract cancelled.

The answer admits the execution of the instruments and alleges that the plaintiff resided with, and was cared for by, him and his wife from July 17, 1908, until March 16, 1909, when she voluntarily went away to visit her brother-in-law, Ramon Lucero; that about April 10, 1909, she returned, and took away the span of horses and all her personal effects; that defendant has always been ready and willing to carry out the agreement, and give her a home free with him; that when she deeded the property to him, the premises were not worth over two hundred dollars, to which he added valuable improvements; denies that the deed was unfairly obtained, and alleges that it was first proposed by plaintiff herself, and made without his solicitation. On plaintiff's motion, the following was stricken from the answer:

"That at no time prior to the said 16th day of March, A. D. 1909, had the plaintiff made any complaint about the treatment received by her from the defendant or his wife, and neither the plaintiff nor defendant had contended, nor had there been ground for such contention, that the other had not faithfully kept and performed the terms and conditions set forth and agreed to in the written agreement set out in the third paragraph of the second cause of action in plaintiff's complaint. That after remaining at the home of her brother-in-law, the said Ramon Lucero, for about three weeks the plaintiff for the first time complained that the defendant had not complied with the terms of the said written agreement. * * * That the defendant is informed and believes, and so upon information and belief alleges the fact to be that the plaintiff would never have been or become dissatisfied with the treatment she received from the defendant but for the meddlesome interference of relatives who hoped to become possessed of the land in question,

and who were chagrined and disappointed when they learned that she had conveyed it to the defendant herein, and would not have brought either the first or second suit against the defendant except at the instigation of these same persons.  *  *  *  and that she was well and fully advised of her rights, and the effect of making the said deed, by a regularly licensed attorney at law who has had many years practice at the bar, and was, at the time of making the said deed, deputy County Clerk of the county of Costilla, and is at this time her attorney in this case: And that in addition to the counsel and advice of the said lawyer, she had the counsel, advice and assistance of Honorable J. M. Olguin, county treasurer of Costilla county, who speaks both his native language, and the native language of the plaintiff, Spanish or Mexican, and English fluently, and reads and writes both languages with ease and accuracy.''

2.    There is some conflict in the evidence, but we think its preponderance fairly shows that plaintiff, who was over sixty years of age, prior to July 17, 1908, lived alone on a small farm which she owned.   In June of that year, while defendant was working in Wyoming, plaintiff inquired about him of her cousin Abundo Martinez, saying she was waiting for him to return; that she wanted to deed him the place, and make him her heir, the same as though he were her son.   July 17, defendant and his wife moved into the house of plaintiff at her request, where they lived together as one family until March 16, 1909, defendant's wife doing the cooking.   It appears a cloud burst had almost destroyed the farm, by washing away the soil, and defendant spent several months in making repairs.   October 7, 1908, they all went to town, and while there, plaintiff executed the instruments which were previously prepared for her, at her request, and under her instructions.  While in town, she went with defendant to the store of Gallegos, to whom she explained the whole transaction, and defendant at that time arranged with the merchant to allow her to have whatever she wanted, and charge it to him, and under this arrangement she procured what articles

she desired that day. The parties continued to live together with no particular trouble until about Christmas, when plaintiff gave one of the horses to Antonio Vigil, who took it away. Defendant went after, and recovered this horse from Vigil, under his claim of right to its use, and this caused some trouble, which, however, was afterwards adjusted. On the 10th of March, 1909, plaintiff went to visit her sister Mrs. Lucero, and soon after authorized Ramon to sell the place she had deeded the defendant, which he attempted to do. April 10th, she returned to the farm, and took away both horses and all her personal effects, and April 27th began suit to cancel the deed and contract. Defendant visited her at her sister's and tried to persuade her to return, but she refused. It seems the sister and her husband knew nothing of the conveyance until this visit, and when they learned of it, defendant says they caused her to be dissatisfied and persuaded her to bring the suit.

The court rejected proof of the following matter: that plaintiff voluntarily, without defendant went to J. M. Olguin and W. H. Meyer, consulted with them about the transaction, and procured their assistance in preparing the papers; that she talked with her countrymen who were capable of giving her advice, and that she thoroughly understood what she was doing; that the sister complained to and scolded her for deeding the property to the defendant; that no complaint had ever been made prior to the visit to the sister, and that defendant from July 17, 1908, to March 19, 1909, bought provisions, groceries and merchandise for the use of the family of which plaintiff was a member.

The court found that the instruments were procured through and by the fraud of the defendant; that he had contributed nothing whatever toward the support of plaintiff; but on the contrary that he and his wife had been supported by her, whom they used as a menial, and entered an order setting aside the deed and cancelling the contract.

3. In this case, the court might well have overruled the motion to strike portions of the answer. It would have done no harm; but inasmuch as the defendant, upon the issues as they were formed, eliminating the stricken matter, could properly have introduced evidence covering these matters after the motion to strike was sustained, the error, if any, was harmless.

4. The excluded evidence tended to show that defendant bought the provisions used in the family; that plaintiff made the deed of her own volition, and that her sister and brother-in-law brought about the dissatisfacttion. We think this evidence was competent, and are not prepared to say it was harmless error to reject it. *Wilson v. Morris,* 4 Colo App. 242, 36 Pac. 248.

5. The evidence did not warrant the finding that defendant procured the instrument through fraud. Fraud was neither alleged nor attempted to be proved. A person commencing litigation should base it upon some definite theory, the pleadings should state the essential facts to support that theory, and the evidence should correspond to the pleadings. It is not sufficient to say that a deed or contract was procured by or through fraud, or that the defendant acted fraudulently, for this would be only a conclusion. The facts constituting the fraud must be pleaded in order that the court may determine whether the act was fraudulent.— *Thomas v. Mackey,* 3 Colo. 390; *Bennett v. Reef,* 16 Colo. 431, 27 Pac. 252; *Kindel v. Le Bert,* 23 Colo. 385, 48 Pac. 641, 58 Am. St. Rep. 234; 18 Enc. Pl. & Pr. 804; Bliss on Code Pleading (2nd Ed.) § 211. But we do not think it necessary in this case that fraud be either alleged or proven. While the complaint contains two causes of action, one based on the deed and the other on the contract, we are inclined to treat it as based upon one transaction, and the pleading as stating one cause of action. Considered in this light the complaint sufficiently alleges a conveyance of the land to defendant, reserving a life interest to plaintiff, in consideration for a promise to support her, which promise defendant

failed to keep. While it is true that contracts of this character usually contain a provision that a failure to perform the acts promised should invalidate the instrument, and entitle the grantor to a reconveyance, we do not regard the omission of such a clause as fatal to the action. In this class of cases there is a line of authorities which hold that where an aged person conveys all his property to another in consideration for a promise by the grantee to support the grantor for life, that if the grantee fails to keep the promise or perform the agreement, a court of equity will grant relief by rescinding the contract, setting aside the deed and ordering a reconveyance of the property without the necessity of alleging or proving fraud. Under the circumstances of such a case, a failure to perform the stipulation for support is a sufficient ground for setting aside the deed without any showing of fraud.—24 Am. & Eng. Enc. of Law (2 Ed.), 620. It is well settled that courts should be very guarded in setting aside duly executed instruments, by requiring clear and convincing proof of the facts upon which they are sought to be avoided. This does not mean proof to a certainty, but a mere preponderance of the evidence is not sufficient. The facts must be established beyond a reasonable doubt.—*Wilson v. Morris,* 4 Colo. App. 242, 36 Pac. 248.

In *White v. Johnson,* 4 Wash. 114, 29 Pac. 932, it is said:

"This case presents anew the old story of trouble arising from this character of contracts; and while courts of equity should be quick to respond to the appeals of the old, the infirm and the incompetent for protection against the wiles of designing men who seek by overreaching methods to profit and thrive at the expense of waning intellects and confiding old age, yet the investigation of such cases must be conducted with extreme caution."

The testimony in this case discloses that the agreement was made in perfect good faith. There is nothing in the evidence which raises a presumption or inference that the promise was made with no intention at the time,

of performing it, and the pleadings contain no such averment. The case is based upon the theory of a failure to keep the promise of maintenance, and the doctrine is confined to cases of this character.

We feel satisfied that the court below was not guided by that principle of equitable jurisprudence which requires that the proof shall be clear and convincing before setting aside or defeating a duly executed instrument.— *Butsch v. Smith,* 40 Colo. 64, 90 Pac. 61. Keeping in view the fact that there may be a retrial of the case, we do not wish to comment on the evidence further than to say that it did not come up to the standard and requirement of being made out beyond a reasonable doubt.

In closing, it seems appropriate to state that the county judge who tried the case was a layman, and not an attorney learned in the law; that the attorney who brought and tried the case for plaintiff was the clerk of his court, took plaintiff's acknowledgment to these instruments, and probably drew them; that he did not resign his position as clerk until six days before the trial. Under these circumstances, we fear he may have exercised an undue influence over the court. The judgment is reversed, and the cause remanded.

*Reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE SCOTT concur.