No. 13,079.

ESTATE OF POTTER.
CARROLL, ADMINISTRATOR ET AL. *v.* COOMBS.
(11 P. [2d] 808)

Decided May 16, 1932.   Rehearing denied May 31, 1932.

Mr. JACOB S. SCHEY, Mr. HERBERT M. BAKER, for plaintiffs in error.

Mr. GRAY SECOR, Mr. P. D. NELSON, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

LENA Coombs obtained a decree in her suit against Frank Carroll, as administrator of the estate of Sadie Andrew Potter (formerly Sadie Andrew), deceased, and

the heirs at law of Mrs. Potter, requiring the defendants to pay to the plaintiff a specified sum or to reconvey certain property theretofore conveyed by the plaintiff to Charles F. Andrew. To reverse that decree the defendants prosecute this writ.

On April 27, 1917, Mrs. Coombs, whose husband had died a short time before, was the owner of certain improved farm land with water rights in Larimer county. The property was worth $30,000. The land, it is stipulated, was "equipped with improvements which had been used and occupied by plaintiff and her husband for years in the operation of said farm." Mrs. Coombs was close to sixty years of age at that time. For a long time prior to Mr. Coombs' death, Dr. Charles F. Andrew was the family physician and confidential friend of Mr. and Mrs. Coombs, and after the death of Mr. Coombs he continued to be Mrs. Coombs' physician and was also her confidential friend and advisor. On the date stated above Mrs. Coombs and Doctor Andrew entered into a contract, whereby it was agreed that he should pay to her $1,500 annually during the rest of her life, and to her estate upon her death $7,500; and that, upon full performance of the agreement by him, there should be delivered to him a deed conveying the land to him, and an assignment transferring the water rights to him, said deed and assignment to be placed in escrow. The Doctor was to have immediate possession of the property, and was to pay all taxes and water assessments, and all expenses incident to ownership and management of the premises. The deed and assignment were executed and placed in escrow, and the Doctor took possession. Desiring to convert the premises into a country home, the Doctor, at an expense of $12,500, built a new house and new barns and made other improvements. Up to April 18, 1922, he made all the payments required by the contract.

On April 18, 1922, while Mrs. Coombs was in poor health and was in a hospital under the care of Doctor Andrew, the parties entered into a new contract, which

abrogated and annulled the former contract. The new contract provided that the Doctor should pay to Mrs. Coombs annually during the rest of her life $1,800; that she should forthwith deed the property to him, reserving to herself a life estate; that he was to retain possession of the property; and that upon full performance by him there should be delivered to him the absolute deed of conveyance already in escrow. The payment of $1,500 due January 7, 1923, was waived and forgiven, and no payment was required to be made to the estate of Mrs. Coombs upon her death. The contract provided that if the Doctor should fail to make any of the required payments, he should reconvey the property to Mrs. Coombs and should forfeit, as liquidated damages and as rental for the premises, all payments theretofore made. The deed was executed and delivered as required. Shortly thereafter Mrs. Coombs sued the Doctor to cancel the deed of August 18, 1922, and the two contracts on the ground of fraud. On August 14, 1926, the Doctor died and his widow and his personal representatives were substituted as defendants. The court found the issues for the defendants, holding that the deed was valid, and that the contract of August 18, 1922, was valid and enforceable and "abrogated, superseded and nullified" the contract of April 7, 1917. The annual payments due January 1, 1931, and January 1, 1932, amounting to $3,600, were not made. Default was made, also, in the payment of the taxes for 1929 and 1930, amounting to $955.75, and Mrs. Coombs was obliged to pay them. While in possession under the second contract, the Doctor and his widow expended $2,500 in improvements. They and their successors received all the income, rents and profits derived from the property since the contract was made. Mrs. Coombs made demand for the payment of the amount due under the second contract, or a reconveyance of the property. The demand was refused, and thereupon Mrs. Coombs brought suit.

The trial court found that the contract of 1922 abro-

gated the contract of 1917; that the improvements made while the contract in suit (that of 1922) was in force cost $2,500; that the property had so depreciated in value that, together with all the improvements made since April, 1917, the property, at the time of the trial, was worth only $2,500 more than it was in 1917, before such improvements were made. The court found, also, that the income received by the Doctor, his widow and their successors, exceeded the amount paid to Mrs. Coombs; that the amounts paid to her would not exceed a fair rental; and that the amount due Mrs. Coombs at the time of the trial was $4,555.75 and interest. The court's decree was that within ninety days after its date the defendants reconvey the property to Mrs. Coombs; provided, that if within the ninety days the defendants should pay into the registry of the court, for delivery to Mrs. Coombs, $4,555.75 with interest to the date of payment, together with costs of suit, the decree, so far as it required a reconveyance, should be deemed to be vacated and of no further effect.

Counsel for the plaintiffs in error contend that, under the doctrine announced in *Fairview Mining Corporation v. American Mines & Smelting Co.*, 86 Colo. 77, 278 Pac. 800, the contract should be foreclosed as a mortgage; or, if not, that the court should not have ordered a reconveyance, except upon Mrs. Coombs' reimbursing the defendants for all payments made by their predecessors to Mrs. Coombs and all expenditures for improvements made since April 27, 1917, or that their equities in the property should have been protected in some other way. Counsel for Mrs. Coombs contend that this case is controlled by our decision in *American Mortgage Co. v. Logan*, 90 Colo. 157, 7 P. (2d) 953; or, if not, then by the rule governing conveyances of real estate under agreement by the vendee to support the vendor for life.

█ We do not think that either the Fairview Mining Corporation case or the American Mortgage Company case is controlling in the present case. This case more

closely resembles what are known as support cases. The law with reference to such cases is thus stated in a note in 43 L. R. A. (N. S.) at page 917: "In most, although not in all, jurisdictions considering the question, contracts by a grantee in effect to furnish a home for and support the grantor, when constituting the consideration for a conveyance by the grantor of the whole or major portion of his property, are regarded as being in a class by themselves, and as being made primarily to secure the support of the grantor by the grantee. This consideration is not regarded as an ordinary obligation, but of a peculiar character, imposing upon the grantee burdens which must be performed if he would retain the property secured by him in reliance upon the obligation by him assumed." Referring to that note, it is said in a later note in L. R. A. 1917D, at page 627: "The rule stated in the note appended to Dixon v. Milling Co. * * * that, by the weight of authority, where an agreement to support is the consideration for a conveyance of property, it must be performed by the grantee or the grantor may have the contract rescinded, receives the support of the majority of the cases passing upon the question since this note." In *Martinez v. Martinez*, 57 Colo. 292, 141 Pac. 469, though we held that the plaintiff had not proven her case, we recognized the true rule with reference to support cases. We said: "While it is true that contracts of this character usually contain a provision that a failure to perform the acts promised should invalidate the instrument, and entitle the grantor to a reconveyance, we do not regard the omission of such a clause as fatal to the action. In this class of cases there is a line of authorities which hold that where an aged person conveys all his property to another in consideration for a promise by the grantee to support the grantor for life, that if the grantee fails to keep the promise or perform the agreement, a court of equity will grant relief by rescinding the contract, setting aside the deed and ordering a reconveyance of the property without the necessity of

alleging or proving fraud. Under the circumstances of such a case, a failure to perform the stipulation for support is a sufficient ground for setting aside the deed without any showing of fraud.'' In the present case, as we have seen, the contract contained a provision for reconveyance.

The contract here, instead of providing for a somewhat indefinite ''reasonable support,'' as provided in many support cases, fixed definitely the amount to be paid each year. At the time the contract was made and the deed delivered, Mrs. Coombs was over sixty-five years of age. Life expectancy at that age is ordinarily 11.10 years, but Mrs. Coombs was in the hospital, ill, and that circumstance had an important bearing upon her life expectancy at that time. If she had died within a month, a week, or even a day, the absolute title to this valuable property would have vested at once in the Doctor. However, she survived, and the Doctor was bound to pay her the stipulated annuity, which, as the trial court found, did not exceed a reasonable rental.

As we have seen, there was a failure to make two annual payments, amounting to $3,600, and there was a default in the payment of two years' taxes, amounting to $955.75. There is no good reason in law or in equity why the provision for a reconveyance should not be specifically enforced. The decree gave the defendants ninety days within which to pay the amount then due and thus avoid a forfeiture. In discussing that provision, the trial court stated that in view of the long delay in bringing the case to trial, the defendants had already had over one year within which to pay, and that it was not necessary to give more than ninety days' additional time.

The disposition that the trial court made of the case seems to us to be fair and just and in accord with the rule supported by the weight of authority.

The judgment is affirmed.

Mr. Chief Justice Adams did not participate.