BRINKLEY v. PATTON et ux.

No. 31267. Feb. 1, 1944.

Rehearing Denied May 29, 1944.

*149 P. 2d 261.*

Charles A. Chandler, of Muskogee, for plaintiff in error.

Gotwals, Killey & Gibson, of Muskogee, for defendants in error.

DAVISON, J. This is an action to establish the existence of a trust in connection with an 80-acre farm in Muskogee county. The plaintiff (plaintiff in error herein), Neeley Brinkley, is an illiterate negro, 77 years old. He is an enrolled freedman member of the Creek Tribe of Indians. The defendant Henry Patton is 13 years his junior. Alice Patton, codefendant, is the second wife of Henry Patton. They were married in March of 1940. Mary Patton, the first wife of Henry Patton (to whom he was married in 1901), died in 1938.

Henry Patton moved to Oklahoma in 1902. Except for a short time in the early years of the twentieth century when he was in Colorado, he has since resided in this state. In 1906, while he was farming as a share cropper, he met the plaintiff, Neeley Brinkley. Soon thereafter the three parties, Henry, his

wife Mary, and Neeley began living together in the same house as one family, although Neeley was not related to either of the other two.

In 1907 the 80-acre farm herein involved was purchased, and thereafter the "family" resided on it. This arrangement continued throughout the years. It survived the death of Mary in 1938, continued while Henry was a widower and lasted about one year after the remarriage of Henry. In January of 1942 differences had arisen and friction had developed between the two men until the plaintiff moved or was forced to move from the premises, the record title of which stood in the name of Henry Patton and Mary B. Patton, his deceased wife.

On the 23rd day of January, 1942, this action was instituted in the district court of Muskogee county by Neeley Brinkley, as plaintiff, against Henry Patton and his present wife, Alice Patton, as defendants. Subsequently an amended petition was filed in which the heirs, administrators, etc., known and unknown, of Mary B. Patton, deceased, were designated as defendants. No question is raised in this appeal in connection with the naming of such persons as defendant and no analysis of this phase of the case will be made in this opinion. No person named as defendant appears herein who claims to be a bona fide purchaser for value of the property or of any interest therein.

In his petition as amended Brinkley sought to be judicially declared the equitable owner of the beneficial interest in the farm and that the defendant Henry Patton and Mary B. Patton, his deceased wife, acquired the legal title solely as trustees for his use and benefit as cestui que trust. In support of his claim he asserted that he furnished the entire purchase price for the farm and money to subsequently improve the same, and to discharge mortgage indebtedness then against the same. That by reason of his illiteracy and ignorance of business affairs, he imposed trust and confidence in Henry Patton and his wife and was without understanding of the "legal effect of said deed" in which Henry and Mary B. Patton were named as grantees.

Plaintiff averred that it was agreed between the parties that they would live together on the property as one family and that "said Henry Patton and his wife would live with plaintiff on said property and serve him as members of said family."

In their answer the defendants rebutted the allegations of plaintiff's petition and asserted ownership by Henry Patton of a fee-simple title in the real estate. A decree quieting title against the claim of Neeley Brinkley was sought. The plaintiff filed a reply in the nature of a general denial.

The cause was tried to the court without the aid of a jury.

From the oral pronouncement of judgment (which may be considered for the purpose of determining the correctness of the conclusion announced; Rogers v. Harris, 76 Okla. 215, 184 P. 459) and the journal entry of judgment, it appears that the trial court determined as a matter of fact that: The plaintiff herein sold his allotment and thereby obtained the money which was used to purchase the land in question, and that he furnished the money to build a house thereon. That the deed from the prior owner of the land was intentionally made to Patton and his wife with the knowledge and consent of the plaintiff. That it was understood between the parties at the time that the plaintiff was to have a home on the land and to live with them under a family arrangement as long as he lived, and that the Pattons contractually obligated themselves to furnish him with a home. The trial court concluded that the defendants had in effect "run the plaintiff off the premises."

Our examination of the record discloses that these findings were amply supported by the evidence and not contrary to the clear weight thereof.

The trial court concluded, however, as a matter of law, that the plaintiff

did not retain the beneficial interest and equitable ownership of the fee-simple title to the land, and that the only relief which could be granted him was to judicially decree to him a right to occupy one room in the house with the right of ingress and egress to and from the premises and to enjoin the defendants from interfering with the plaintiff in the exercise of the rights thus judicially decreed to him. The trial court thus undertook to award and declare partial specific performance of a contract to furnish to the plaintiff a home for life.

There are two criticisms of such a decree. In the first place it is inadequate, for it merely gives to the plaintiff a bare room in uncongenial surroundings, which is much less than the comfort of a home which comprehends, in addition to shelter, available palatable food and congenial companionship, all of which, under the agreement, should have been furnished. In the second place, it puts the court in the position of undertaking to do a vain thing. It is impractical to undertake to make people between whom friction has developed live together in the same house.

For the latter reason courts of equity, generally speaking, have declined to grant specific performance in this type of contract, though they have generally found some means of awarding relief.

As was said by the Connecticut Court of Errors in granting "specific restitution" for breach of contract in a somewhat analogous case, Caramini v. Tegulias, 121 Conn. 548, 186 A. 482, 112 A. L. R. 666:

". . . Specific performance is not available, and a judgment for damages would be an inadequate remedy. The grantor is entitled to the remedy of specific restitution. Restatement, Contracts, Op. Cit. sec. 354; 5 Pomeroy, Equity Jurisprudence (4th Ed.) para. 2108; 6 Page, Contracts, para. 3415; 8 R.C.L. 927. . . ."

Cases dealing with the granting of relief on this theory are collected in an annotation appearing in 112 A.L.R. at pg. 670.

Relief has also been granted and the property returned or awarded the person who was to be furnished a home on the theory of conditions subsequent and conditions precedent. Lucas v. Lucas, 171 Ga. 806, 156 S. E. 680, 76 A.L.R. 737. See, also, annotation 76 A.L.R. 742.

Dealing generally with remedies available in this class of cases, see annotation in 43 L.R.A. (N.S.) 916; L.R.A. 1917D, 627; 12 Ann. Cas. 899.

In the annotation appearing in 43 L.R.A. (N.S.) 916, supra, the annotator observes at page 917:

"In most, although not in all, jurisdictions considering the question, contracts by a grantee in effect to furnish a home for and support the grantor, when constituting the consideration for a conveyance by the grantor of the whole or major portion of his property, are regarded as being in a class by themselves, and as being made primarily to secure the support of the grantor by the grantee. This consideration is not regarded as an ordinary obligation, but of a peculiar character, imposing upon the grantee burdens which must be performed if he would retain the property secured by him in reliance upon the obligation by him assumed."

More recently the Supreme Court of Colorado observed in granting relief in Barth v. Titus, 108 Colo. 333, 117 P. 2d 480:

"'. . . Ordinarily,' says the Iowa Supreme Court, 'where a person has parted with his property in consideration of an agreement for support for life and discord thereafter arises between the parties, as it too often does, courts are disposed to give the grantor the benefit of all reasonable doubt, and restore the property if it can be done without manifest injustice to the grantee.' . . ."

In Spangler v. Yarborough, 23 Okla. 806, 101 P. 1107, this court granted relief of cancellation of a deed for failure of the grantees to support grantor, thus revesting title in the person to be supported on the theory of abandonment, and presumed fraud in the procurement by reason of nonperformance relatively

soon after the deed was made. Such a presumption of fraud in the procurement could not be indulged in this case by reason of the continued performance for more than 30 years.

In this appeal our consideration of the grounds upon which relief can be granted is somewhat limited, since the plaintiff prosecutes the cause upon the sole theory that the defendant held the property in trust and that he is the beneficial owner or cestui que trust (a theory that we cannot enlarge upon appeal; Burke v. Smith, 57 Okla. 196, 157 P. 51).

Some courts have further enlarged the application of the trust theory in this character of case. Grant v. Bell, 26 R. I. 288, 58 Atl. 951. However, we are not disposed to abnormally expand the theory.

To the extent that the plaintiff at all times since the purchase of the property was the owner of a vested beneficial interest therein, the trust theory is tenable (Bogert on Trusts and Trustees, vol. 1, pg. 84), since a trust may exist in any type of property, real or personal, 26 R.C.L. 1171, the essential element being that there must be an interest in property known as the "trust res" the legal title of which is owned by one for the use and benefit of another. This trust res may, however, consist of an interest in real property less than the whole, as, for instance, an undivided one-third interest. McCoy v. McCoy, 30 Okla. 379, 121 P. 176, Ann. Cases 1913C, 146.

60 O. S. 1941 § 137 provides:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

This legislative declaration is a legislative reiteration of the common law. Barnes v. Lynch, 9 Okla. 11, 156, 59 P. 995. However, this only creates a presumption and comprehends resort to parol evidence. Oliphant v. Rogers, 186 Okla. 70, 95 P. 2d 887; Wilhelm v. Pfinning, 191 Okla. 321, 129 P. 2d 580.

A resort to the evidence introduced in this case discloses, as the trial court found, that although Neeley Brinkley, paid the entire purchase price of the realty, he did not intend to retain the entire beneficial interest. On the contrary, at the time of purchase it appears that he intended his interest in the premises to terminate on his death, thus the reversionary interest rested in the Pattons. It also is apparent that he did not then intend to assert or use a greater beneficial interest in the premises than did the Pattons. In fact, it appears that it was intended that his rights to use and occupy the premises with the Pattons were to be co-equal.

We are of the opinion, and hold, upon consideration of the proof and finding of the trial court, that so far as the beneficial interest in the premises was concerned (and independent of any personal obligation to support) the interest of Brinkley and the Pattons was to be co-equal and undivided during the life of Brinkley, but that Brinkley's interest was to terminate on his death. Thus the Pattons held in trust for Brinkley a vested undivided half interest in an estate for the life of Brinkley, comparable to the interest of a tenant in common for life, which is characterized by the single unity of right of possession. Earp v. Mid-Continent Petroleum Corporation, 167 Okla. 86, 27 P. 2d 855.

This is more than the trial court has allowed but less vested interest than plaintiff asserts.

Under our view of the case, it will be necessary that we reverse the cause for a new trial, on which retrial the rights of the parties will be adjudicated in accord with the views herein expressed, unless the evidence introduced impels a different conclusion as to the facts or the theory impels the application of different principles of law.

CORN, C.J., GIBSON, V.C.J., and BAYLESS, WELCH, HURST, and ARNOLD, JJ., concur. RILEY and OSBORN, JJ., absent.

GIBSON, V. C. J. (specially concur-

ring). I agree that this case should be reversed, but I think we should dispose of it by final decree in this court based on the issues and the evidence presented by the record.

In its inception, the arrangement between the parties contained some of the elements of a statutory resulting trust (60 O. S. 1941 § 137); where real property is granted to one, and the consideration paid by another, a trust is presumed to result in favor of the latter. Id. But here, a constructive trust is proper and consistent with the established facts. The parties stand in the same relation to each other as do parties to a transaction where one of them deeds his property to the other in consideration of an agreement to support the latter for the remainder of his life. Where the grantee in such case refuses to abide by the agreement but yet attempts to hold the land, the agreement ends, the consideration fails, and the condition upon which an absolute title is to vest never takes place, and a constructive trust in the land arises in favor of the grantor or one who furnishes the purchase money, and the court will so decree, and will restore the property to him if such can be done without manifest injury to the grantee. The general rule which seems to be recognized by the large majority is stated in Barth v. Titus, 108 Colo. 333, 117 P. 2d 480, as follows:

"Ordinarily, where a person has parted with his property in consideration of an agreement for support for life and discord thereafter arises between the parties, . . . courts are disposed to give grantor benefit of all reasonable doubt and restore property if it can be done without manifest injustice to grantee."

The pleadings and evidence will support such a decree and disposition of this case. Defendants seek by cross-petition merely to quiet title as against plaintiff's claims. They neither allege nor attempt to prove any extenuating circumstances that would justify their action in ejecting plaintiff; nor do they put forth any claim to remuneration from plaintiff, or attempt to show that manifest injustice would result to them in event of restoration.