JOHN LOSCHEN, appellee, v. CHARLES LE ROY CLARK, appellant.

No. 51299.

(Reported in 127 N.W.2d 600)

414

APRIL 8, 1964.

C. R. Bentz and John N. Hartley, both of Winterset, for appellant.

Daniel J. Gallery, of Winterset, for appellee.

PETERSON, J.—This is an action in equity to establish a trust, and to enforce a support agreement as to $8000 which was paid by plaintiff to his daughter and her then husband, defendant herein, on the purchase of a farm for her. In consideration of such payment she and her husband agreed to pay $30 per month toward the support of plaintiff for the remainder of his life. They paid until 1960. Marital difficulties arose and the parties were divorced. Defendant then refused to pay, and contended the farm was his and he was under no further obligation. Trial court decided in favor of plaintiff. Defendant has appealed.

I. In 1957 plaintiff was living in Van Meter, Iowa. De-

fendant and his wife were living in Des Moines. Defendant's wife was plaintiff's adopted daughter. Defendant and his wife had been talking about wanting to move to a farm. Plaintiff knew about a farm of 80 acres between Van Meter and Winterset owned by Oscar and Grace Marquardt. The means of plaintiff were somewhat modest, but he decided he wanted to help each of his two daughters to buy a farm. He owned one which he gave to his daughter Wilma. It contained 160 acres and had a comparatively small mortgage upon it. The cost of the Marquardt farm was $16,000. He had $8000 in cash and was willing to pay that on the farm for Betty if a loan could be secured for the other $8000. Plaintiff made some inquiry and found a man by the name of Ben Clayton who wanted a first mortgage. He arranged with him for an $8000 mortgage on the Marquardt farm.

Plaintiff, defendant, his wife Betty, Mr. Clayton and the Marquardts met in the office of Attorney Craft in Adel to complete the transaction. Plaintiff gave Mr. and Mrs. Marquardt his check for $8000. Mr. Clayton also paid $8000 and secured a first mortgage from defendant and his wife for said amount. The deed was issued directly from Mr. and Mrs. Marquardt to defendant and his wife as joint tenants. They alone signed the note and mortgage to Mr. Clayton. Defendant and his wife agreed to pay off the mortgage to Mr. Clayton at the rate of $500 per year plus interest. Plaintiff testified, and other testimony is also present in the case, showing that defendant and his wife Betty agreed to pay plaintiff $30 per month as long as he lived, in consideration of the payment of $8000 upon the farm. The payments of $30 per month were made, either by defendant or Betty, from February 1957 until January 1960.

Shortly prior to the latter date defendant and his wife Betty had marital troubles. She filed a petition for divorce against him. He filed answer and counterclaim. Upon trial a divorce was granted to defendant, together with custody of the three children of the parties. In the divorce decree the court granted the ownership of the 80 acres to defendant. The value of this provision is problematical, as far as plaintiff is concerned. Thereafter, defendant contended he was not obligated for the

payment of the $30 per month and that he was the absolute owner of the farm.

The position of defendant as to this matter was shown in the evidence without any contradiction. Defendant's banker testified that each year defendant filed a statement with him as to his financial condition. In 1958 and 1959 defendant had placed in his financial statements the clause "interest on equity in farm to father, John Loschen, $30 per month." However, when the defendant came in to make his financial statement in 1960 he told the banker he did not owe the $30 per month anymore.

Plaintiff deeded his 160-acre farm to his daughter, Wilma McFarlin, and her husband. They assumed the mortgage and agreed to pay him $60 per month during the remainder of his life.

At the time plaintiff made these two transactions on behalf of his two daughters, his only income was a pension of about $65 per month and social security payments of approximately $94 per month. Plaintiff had a heart attack in 1954 and was not able to work thereafter. He testified he arranged for the farm for each of the two daughters, partly because of his love and affection for his daughters and also because of the agreement of the daughters and their husbands to make him payments of $60 and $30 per month respectively during the remainder of his life. With his pension, social security, and this $90 per month from his two daughters he said he was able to live in comfort. In each case, if the daughters and their husbands kept up the monthly support payments regularly for the remainder of his life he testified the farms at his death were to become the absolute property of the daughters and their husbands. The evidence disclosed without question the McFarlins kept up the payments of $60 per month, but defendant, after his divorce, failed and refused to make payment of his $30 per month.

On November 17, 1960, plaintiff filed petition in equity, which is the action involved herein. Defendant filed answer and also filed counterclaim alleging because of the provision in the divorce case between Betty and himself he became the absolute and unqualified owner of the farm and title should be quieted

in him. After a trial as to the merits of the controversy the court found plaintiff was entitled in this equity action to the relief for which he prayed. It held the farm was held in trust by defendant for plaintiff and plaintiff was entitled to a return of the farm, subject to the first mortgage against it in favor of Mr. Clayton, or was entitled to the return of his $8000 with interest. Plaintiff elected to take the $8000.

II. Appellant presented six alleged errors on this appeal. We will list them with a synopsis of our statement concerning each error, but will later consider at some length the legal merits of the controversy.

1. Whether trial court erred in finding an agreement for support when none had been alleged and parties did not try case on such an issue.

Plaintiff alleged in his petition, and the evidence disclosed, defendant and his wife Betty agreed to pay plaintiff $30 per month for the remainder of his life in consideration of his investment of $8000 for them in a farm which was to be Betty's upon his death.

There is no specific allegation of a support agreement. Plaintiff refers to the monthly payments of $30 as "interest" and the advance of the money as a "loan". The trial court interpreted this to be a support agreement. We believe he was justified in treating the agreement, in effect, a support agreement.

2. Whether trial court erred in finding that a trust be impressed upon the real estate involved. In argument defendant contends that no trust condition appears in the plaintiff's pleading. However, plaintiff clearly states that the farm and the money paid upon the farm by plaintiff was held by defendant "in trust". The type of trust was not named in the petition, but that is immaterial because we will determine the type of trust from the evidence and the circumstances.

3. Whether the findings and decree are contrary to the pleadings and evidence and unsupported thereby. The petition clearly alleges the facts of the situation and the evidence clearly supports such facts.

4. Whether the findings and decree are sustainable under

the law of this state applicable thereto. A very definite line of decisions, both as to constructive trust and as to relief in favor of donor when agreed support money is not paid, appears in this court throughout our judicial history.

5. Whether plaintiff was entitled to any relief under the pleadings and evidence. This is somewhat of a duplication and we have stated above that both the pleadings and the evidence sustain the decision of the trial court.

6. Whether defendant was entitled to a decree quieting title in the real estate. The trial court held that under the evidence adduced at the hearing defendant was not entitled to a quieting title decree, and we concur.

III. There are two important and overriding questions in the case at bar.

1. Do the evidence and circumstances create a trust of some type favorable to plaintiff?

2. Have the decisions of our state, and generally throughout the nation, established precedents for the protection of aged persons who have divested themselves of their property upon an agreement by the donee to provide support, when such support agreements have been violated?

IV. As to the first question we have in Iowa a section in our statutes with reference to trusts. It is section 557.10, Iowa Code: "Declarations of trust. Declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law." The above section has reference primarily to express trusts. Appellant contends the trust referred to in plaintiff's petition was an express trust and that neither the pleading nor the evidence sustains an express trust. The plaintiff's petition does not allege the existence of an express trust. It does not use a qualifying word ahead of the word "trust", but simply states that defendant holds said real estate "in trust" for plaintiff and such trust should be established and declared in favor of plaintiff upon the real estate involved.

The trust involved in the case at bar is a constructive trust. In addition to the ordinary express trust there have de-

veloped through decisions throughout the years trusts which are known as resulting trusts and trusts which are known as constructive trusts. With reference to resulting trusts it has generally been held that some fraud should be shown. With reference to constructive trusts fraud may be present, but in many cases fraud is not present. We made a rather comprehensive but concise definition of a constructive trust in Homolka v. Drahos, 247 Iowa 525, 529, 74 N.W.2d 589, when we said: "A constructive trust is an appropriate remedy against unjust enrichment, whether initially tainted with fraud or not. * * * However, in order to establish such a trust it is necessary that there be a res or specific fund on which the trust may be fixed. * * * one who seeks to establish such trust must actually identify his property which is the subject of the trust, or other property into which it has passed, and that it is actually in the possession of the party sought to be charged."

A good general definition as to constructive trusts appears in 89 C. J. S., Trusts, section 139a: "A constructive trust is a creature of equity, defined * * * as a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest. So, the doctrine of constructive trust is an instrument of equity for the maintenance of justice, good faith, and good conscience, resting on a sound public policy requiring that the law should not become the instrument of designing persons to be used for the purpose of fraud. * * * The feature which distinguishes constructive trusts from express trusts and resulting trusts is that the former do not arise by virtue of agreement or intention, either actual or implied, but by operation of law, or, more accurately, by construction of the court, and that result is reached in such instances regardless of, and ordinarily contrary to, any intention to create a trust. Such trusts are entirely in invitum, and are forced on the conscience of the trustee in favor of the person defrauded, for the purpose of working out right and justice and preventing fraud, or, as frequently stated, for the purpose of preventing unjust enrichment."

A good analysis appears in 26 R. C. L., Trusts, section 78: "Constructive trusts may be divided into three classes: first,

trusts that arise from actual fraud; second, trusts that arise from constructive fraud; third, trusts that arise from some equitable principle independent of the existence of any fraud."

54 Am. Jur., Trusts, section 219, states: "A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it."

Also see 54 Am. Jur., Trusts, section 220, and Rance v. Gaddis, 226 Iowa 531, 284 N.W. 468.

The Rance case has some elements of similarity to the case at bar, although the element of fraud was present in the case. She had secured a deed to certain property and the statement of the court was: "Under such a situation equity uniformly establishes a constructive trust and holds the recipient of the property as a trustee ex maleficio."

In the instant case there is very little conflict in the testimony. There is no question but what plaintiff paid $8000 toward the purchase price of a farm for defendant and his then wife, Betty. There is no question in the evidence but what defendant and Betty were to pay plaintiff $30 per month toward his support during the remainder of his lifetime. There are conversations in the evidence which support this situation. Furthermore, defendant and Betty did pay $30 per month to plaintiff during the remainder of 1957 and during 1958 and 1959. Some of the payments were made by checks of defendant and some were paid by Betty. Some of the payments were made in cash. There is no dispute as to the fact that defendant repudiated the obligation. He told his banker he did not owe the $30 per month after the divorce between Betty and himself. His pleadings also established the fact without question. He has filed a counterclaim in which he prays for the quieting of his title as to the eighty acres as against plaintiff.

While defendant's actions and statements were reprehensible, yet they can hardly be called a fraudulent transaction. If there is any fraud it is in defendant refusing to comply with his agreement. However, this fact does not destroy the existence

of a constructive trust. In the case at bar we hold because of the circumstances of the situation and the many verbal statements made as shown by the testimony of the various witnesses, a constructive trust was created in favor of plaintiff and as against the farm he had helped to purchase and as to the $8000 cash he paid on the farm.

V. Several decisions have been rendered by this court, protecting the rights of an aged parent who has conveyed property in consideration of support, and the grantee has failed to comply with the support agreement. Such decisions run back for a period of more than seventy years and continue up until a fairly recent date. Patterson v. Patterson, 81 Iowa 626, 47 N.W. 768; Lewis v. Wilcox, 131 Iowa 268, 108 N.W. 536; Kramer v. Mericle, 195 Iowa 404, 192 N.W. 257; Rance v. Gaddis, 226 Iowa 531, 284 N.W. 468.

In the early case of Patterson v. Patterson, supra, a mother who was infirm and in poor health conveyed eighty-five acres of land, and other property, to her son. There was a statement in the deed as to care by the son in the following words: " 'In consideration of future maintenance and care * * * I hereby sell and convey'." Defendant failed to give plaintiff the care required by her age and condition of health and by the deed. The court said at page 628 of 81 Iowa: "The defendant, in failing to care for his mother in accord with this requirement of filial duty and of humanity, violated the contract, thus failing to render the very consideration of the deed. * * * This failure to perform the contract * * * is a sufficient ground to support the decree of the district court setting it [the deed] aside. Equity will not permit a party to enjoy the fruits of [a] contract when he deliberately refuses to perform the obligations imposed upon him therein."

While in Lewis v. Wilcox, supra, there were other considerations which caused the court to refuse to set the deed aside, the court did use the following language (page 273 of 131 Iowa): "Ordinarily where a person has parted with his property in consideration of an agreement for support for life, and discord thereafter arises between the parties, as it too often does, courts are disposed to give the grantor the benefit of all reasonable

doubt, and restore the property if it can be done without manifest injustice to the grantee."

In Kramer v. Mericle, supra, a widow, Edna Kramer, conveyed by warranty deed the fee title to certain real estate to her son Milburn. The deed contained the following condition: " 'However, with the express understanding and agreement that I shall have free use of the above described premises as a home, and maintenance while I shall live, or during my natural life'." Milburn deeded the property to a brother, but on the condition that the terms of his deed should be carried out as far as the mother was concerned. The brother deeded to defendant with the same reservations, but the result of the conveyances from one party to another was that the grantor did not secure the maintenance to which she was entitled. The court said at pages 407, 408 of 195 Iowa: "Equity will not permit a party to enjoy the fruits of a contract when he deliberately refuses or makes impossible of performance the obligations imposed therein. Equity will grant relief by setting aside a deed and reinvesting the grantor with title when the conveyance was upon consideration that the grantee should support and maintain the grantor during her lifetime, and when there is a failure to furnish such support and maintenance, or when it is made impossible of performance." The deed was set aside.

The somewhat recent case of Rance v. Gaddis, supra, was not a support case. However, it sustains the equitable proposition that when a deed is made and consideration is not carried out such deed may be set aside.

The principle has not only been established in Iowa, but has been supported in many other jurisdictions. In the Wisconsin case of Glocke v. Glocke, 113 Wis. 303, 89 N.W. 118, 57 L. R. A. 458, an aged parent conveyed his property to his son in consideration of support during the remainder of his life, or by paying to grantor some money in specific amounts at specific times. The son failed to perform the conditions under which the property was deeded and the court held as a court of equity that it would and did take jurisdiction of the cause to give a protective remedy to the grantor by establishing his status as owner of the property. The court held it took jurisdiction in

the case, not to forfeit a title, but to quiet a title already forfeited, for nonperformance of the condition subsequent.

In the Rhode Island case of Grant v. Bell, 26 R. I. 288, 289, 58 A. 951, 952, a property was conveyed on the condition that grantee, a daughter, would support grantor. The court said: "It may be said that conveyances of this kind create a continuing obligation on the part of the grantee, in the nature of a trust, for which a remedy at law on the contract is neither adequate nor reasonable. * * * 'Must the grantors bring their suit every six months or twelve months for a failure on the part of the grantee to supply them with food and clothing?' * * * The remedy at law would also involve a multiplicity of suits. While such contracts are not often in form a trust, they are usually in fact a trust. * * * The result, so far as the donor is concerned, would be no different if he had made an express deed of trust. * * * We think it is much more consonant with the principles of equity to treat this as an implied trust, renounced by the donee, than to treat it as a mere contract. * * * We are, therefore, of opinion that the complainant is entitled to relief."

Several Illinois decisions have announced the same principle and arrived at the same conclusion. Kusch v. Kusch, 143 Ill. 353, 32 N.E. 267; Cooper v. Gum, 152 Ill. 471, 39 N.E. 267.

In the Kusch case an aged father, a widower, deeded a property in Chicago and a farm, which was all the property he owned, to his son, an only child, Charles L. Kusch. In this case the deed stated upon its face as follows: " 'For the consideration of a life maintenance and the sum of one dollar'." Shortly after the conveyance the son, according to the petition, commenced a course of cruel treatment, made assaults upon the father, and refused to give him food, clothing, money or shelter and finally drove him from the home. The father commenced an action to set aside the deed. The prayer of the petition was granted. The Illinois court said (page 356 of 143 Ill.): "The doctrine is well established in this State, that where one conveys his real estate and property to another person, in consideration that such other person will support and maintain the grantor during his natural life, and the grantee afterwards refuses to perform his contract for such support and maintenance, a court

of equity will grant relief by rescinding the contract and canceling the deed."

The decree of the trial court is correct. It is the only manner in which plaintiff can secure proper and practical relief. If a lien for the $30 per month was placed against the farm, it could, and perhaps would, lead to endless litigation to enforce the lien. If a judgment for the $30 per month was granted in favor of plaintiff against defendant it is doubtful if such judgment would prove effective to aid in plaintiff's support, and doubtless would develop future legal difficulties. It is within the province of a court of equity to grant full and complete relief to plaintiff. The trial court's decree accomplishes this purpose. We approve the election which plaintiff had to either take reconveyance of the farm subject to the mortgage or take $8000 in cash. Plaintiff filed written election to take the money. This gives defendant an opportunity, if he so desires, to keep the farm and secure $8000 and interest in cash to pay plaintiff. Otherwise, plaintiff has the right to sell the farm and secure his money as provided by the trial court. These failures to support cases, not only in Iowa but in many states, are reminders of the old adage. Parents through hard work and sacrifice can rear and bring to manhood and womanhood seven children. However, too often seven children do not properly support and care for the parents when the days of infirmity and ill health fall upon them.

The decree and judgment of the trial court is affirmed.— Affirmed.

All JUSTICES concur.