In the Matter of the ESTATE OF George W. WELCH, Deceased.

Patricia J. FISHER, Plaintiff–Appellant,

v.

ESTATE OF Dorothy C. WELCH, Defendants–Appellees.

No. 93–1758.

Court of Appeals of Iowa.

April 28, 1995.

As Corrected May 1, 1995.

Gerald J. Kucera of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

Kenneth L. Keith of Keith, Orsborn, Bauerle, Milani & Neary, Ottumwa, and James F. Pickens and Mark H. Ogden of Pickens, Barnes & Abernathy, Cedar Rapids, for appellees.

Heard by DONIELSON, P.J., CADY, J., and PERKINS, Senior Judge *, but decided en banc.

* Senior judge from the 5th Judicial District serving on this court by order of the Iowa Supreme Court.

CADY, Judge.

This is an appeal by plaintiff, Patricia Fisher, from the district court's refusal to establish a constructive trust over certain inter vivos transfers of property by her father to his wife. On our de novo review, we reverse.

George W. Welch died testate on April 25, 1991. He was sixty-nine years old. He was survived by his third wife, Dorothy Welch, and his daughter from his first marriage, Patricia Fisher. George and Dorothy had been married for eight months prior to George's death. George was very wealthy.

Although George and Dorothy executed a prenuptial agreement, George made a new will during the month preceding his death. Dorothy was the sole beneficiary under the will if she survived George. Patricia was the sole beneficiary under George's former will.

George owned property valued at nearly one million dollars prior to his death. Of this amount, approximately $400,000 was owned with Patricia in joint tenancy. During the eight-month marriage to Dorothy, George transferred over $330,000 of assets, annuities, and insurance to Dorothy, either as joint tenant or as sole owner. George also asked Patricia to transfer a portion of their jointly-owned assets back to him. Dorothy assisted in the transfer of George's assets and often completed checks and other papers for George's signature. During the last month of George's life, Dorothy wrote checks totaling over $36,000. Dorothy received approximately sixty percent, or $570,000, of George's estate, either by his will or through the inter vivos transfer of assets during the marriage.

Patricia sought to set aside the will and the inter vivos transfers based on undue influence. She also claimed the premarital agreement precluded the inter vivos transfers.

The will contest was submitted to a jury, and the trial court heard the claim involving the inter vivos transfers. The jury found undue influence and set aside the will, while the trial court found no undue influence to support a constructive trust over the inter vivos transfers. The trial court determined that a confidential relationship did not exist between George and Dorothy and found Patricia failed to meet her burden of showing Dorothy exercised a dominating influence over George.

## I. Scope of Review.

In this equity action, our review is de novo. Iowa R.App.P. 4.; *Slocum v. Hammond*, 346 N.W.2d 485, 491 (Iowa 1984); *Groves v. Groves*, 248 Iowa 682, 692, 82 N.W.2d 124, 130 (1957). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7); *Groves*, 248 Iowa at 692, 82 N.W.2d at 130.

## II. Constructive Trust.

A constructive trust is a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest. *Slocum*, 346 N.W.2d at 493. It is an equitable doctrine applied for purposes of restitution, to prevent unjust enrichment. *Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 704–05 (Iowa 1982).

Constructive trusts fall into three categories: "(1) those arising from actual fraud; (2) those arising from constructive fraud (appropriation of property by fiduciaries or others in confidential relationships); and (3) those based on equitable principles other than fraud." *Id.* Other circumstances supporting imposition of equitable principles include bad faith, duress, coercion, undue influence, abuse of confidence, or any form of unconscionable conduct or questionable means by which one obtains the legal right to property which they should not in equity and good conscience hold. 76 Am.Jur.2d *Trusts* § 201 at 227–30 (1992); *See Loschen v. Clark*, 256 Iowa 413, 420–21, 127 N.W.2d 600, 603–04 (Iowa 1964) (holding although no fraud existed, a constructive trust was created when defendant, who held legal title to a farm repudiated an oral obligation to make monthly payments to plaintiff, who had furnished the purchase price of the farm). One

seeking the remedy must establish the right by clear, convincing, and satisfactory evidence. *Id.* (citing *Copeland v. Voge,* 237 Iowa 102, 107, 20 N.W.2d 2, 5 (1945)).

Patricia seeks imposition of a constructive trust on two alternative bases. First she asserts a constructive trust should be created because a confidential relationship existed between Dorothy and George, and Dorothy abused this relationship. Second, she claims even if a confidential relationship did not exist, a constructive trust should be established on the basis that Dorothy unduly influenced George.

Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that the person will not act in a manner inconsistent with his or her welfare. Restatement (Second) of Contracts § 177 (1981). The ultimate question is whether the result was produced by means that seriously impaired the free and competent exercise of judgment. *Id.* § 177 cmt. b; *See Peoples Bank & Trust Co. v. Lala,* 392 N.W.2d 179 (Iowa App.1986). There are four elements necessary to sustain a finding of undue influence. They are: (1) the grantor's susceptibility to undue influence; (2) opportunity to exercise such influence and effect the wrongful purpose; (3) disposition to influence unduly for the purpose of procuring an improper favor; and (4) a result clearly the effect of undue influence. *Pence v. Rawlings,* 453 N.W.2d 249, 252 (Iowa App. 1990).

On our review of the record, we find it unnecessary to determine the existence of a confidential relationship or to determine the effect of the prenuptial agreement. We find clear and convincing evidence that Dorothy acted unconscionably by exercising undue influence over George in order to gain title to his property. Under the circumstances of this case, allowing Dorothy to retain the property gained in this manner would be inequitable.

George was in very poor health at the time of his marriage to Dorothy in August 1990. He suffered a crippling heart attack in 1988 and was told by doctors he would only live a few more years. After the heart attack, George was not permitted to drive and could not live alone. There was evidence that the damage to his heart might have affected the flow of blood to his brain. George suffered from severe depression and was suicidal. He was also an alcoholic.

Dorothy was a friend of George and his previous wife, Betty. Betty died in May 1988. Within a few days after Betty's death, Dorothy told George she had always loved him and wanted to marry him. She later threatened to commit suicide if George did not marry her. George asked other women to marry him before he married Dorothy. He was lonely and desperately looking for companionship.

After George and Dorothy married, George became isolated from his family and medical assistance. He stopped seeing his cardiologist and psychiatrist. His physical and medical condition deteriorated. There was medical testimony that George was very vulnerable and susceptible to undue influence during the last year of his life. He was dependent upon Dorothy for transportation, to remind him to take his medicine, for care when he had angina attacks, and for emotional support.

Dorothy was aware of George's wealth and knew George had a limited time to live due to his heart condition. Dorothy was inconsistent and contradictory in her testimony and was forgetful at other times. She played an active role in the transfer of George's assets during the eight-month marriage, but attempted to minimize her role at trial. The transfer of assets into joint tenancy began shortly after the marriage and continued until shortly before George's death. Dorothy even removed George's name from their joint bank account within a month before his death. When George died she had all the locks changed on the house and allegedly informed Patricia of George's death by stating the money was put in joint accounts, the wills were changed, and your father has died. We do not share the trial court's view that the various financial arrangements between George and Dorothy were normal transactions between a husband and wife.

We conclude that a fair and pragmatic review of all the evidence clearly shows undue influence. Dorothy positioned herself as a dominate influence over George during the last months of his life. At the same time, George became particularly susceptible to being influenced due to his advancing age, impending death, deteriorating physical condition, and unstable emotional health. Furthermore, the manner in which George and Dorothy conducted their business, and even Dorothy's actions after George died, reveal a pattern of unfair persuasion or influence. George was isolated from family, friends, and complete medical care. The efforts to transfer his property were rushed and the transactions were done at unusual times. Upon our review of all the facts and circumstances, we find: George was susceptible; Dorothy had an opportunity to exercise undue influence, as well as the disposition to wrongfully influence George for the purpose of obtaining money and assets; and the assets she received resulted from the undue influence.

We remand this case to the district court for entry of an order establishing a constructive trust for the benefit of Patricia in the property sought by Patricia and identified in the findings of fact in the district court order, and for further proceedings consistent with this ruling.

**REVERSED AND REMANDED.**