Denny **BERGER**, David Brezina, Calvin Dostal, Stanley Dostal, Dennis Gienger, Gary Hanus, Stanley Hanus, Ray Kubik, Bruce Morrison, Sash Farms Company, Harold Vorba, Evan Wilson, Paul Wobeter, Ada Krutzfeldt, Emma Kubik, and Pete Wobeter, Appellees,

Kenneth Strohbehn, Plaintiff,

v.

CAS' FEED STORE, INC., Defendant,

and

Farmers Savings Bank & Trust–Traer, Appellant.

No. 94–688.

Supreme Court of Iowa.

Feb. 14, 1996.

Eugene J. Kopecky and Karen A. Volz of Ackley, Kopecky & Kingery, Cedar Rapids, for appellant.

James C. Ellefson and James L. Goodman of Welp, Harrison, Brennecke & Moore, Marshalltown, for appellees.

Thomas E. Salsbery and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for amici curiae Iowa Bankers Association and American Bankers Association.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

LARSON, Justice.

Cas' Feed Store (Cas) in Traer, Iowa, had a long-standing arrangement with its customers by which the customers prepaid (usually at the end of the tax year) for future crop expenses such as chemicals, seed, and fertilizer. Several reasons were given for this arrangement, but the greatest impetus seems to be to offset income, for tax purposes, by making these payments in the current tax year.

Cas deposited some of these prepayments in the Farmers Savings Bank and Trust in Traer. Cas also borrowed money from the bank and, during the time in question, was heavily indebted to it. Cas defaulted on its loan, and the bank seized the funds in the Cas account that included the farmers' prepayments. The customers sued the bank and Cas on the theories of intentional interference with a contract and constructive trust.

The case went to trial to a jury, which awarded damages to the plaintiffs. The court entered judgment on the jury's verdict in the intentional interference case, and because the plaintiffs had recovered on that theory, the court ruled that the constructive trust aspect of the case was moot. The court of appeals affirmed, and we granted further review. We now vacate the court of appeals decision and reverse the district court.

■ Cas' agreement with the bank allowed the bank to exercise its rights as follows:

**SET–OFF:** You have the right to set-off any amount I owe you under this note against any right I have to receive money from you. If my right to receive money from you is owned by someone else not paying this note, your set-off can only reach funds I could have reached with my own request or endorsement. Your right of set-off does not extend to accounts where my rights are only as a fiduciary. It also does not extend to my IRA or other tax-deferred retirement account.

Your right of set-off applies without your first telling me you are going to use it. It applies no matter what sort or value of collateral is on this loan. It also applies no matter who else has agreed to pay this note.

You will not be liable for dishonor of a check where such dishonor occurs because you set-off this debt against my account.

It is clear that the bank was aware that some of the funds in the Cas account were prepayments from its customers, but it is also clear that these funds were not placed in a separate trust account nor otherwise identified as prepayment funds. In fact, we recently reversed the conviction of the president of Cas for theft by misappropriation because there was no trust agreement between Cas and its customers. *See State v.*

*Caslavka,* 531 N.W.2d 102, 104–06 (Iowa 1995).

The bank's general right of setoff is well established. *See, e.g., Farmers Coop. Elevator, Inc. v. State Bank,* 236 N.W.2d 674, 677 (Iowa 1975); *Hanby v. First Sav. Bank,* 197 Iowa 150, 152, 197 N.W. 51, 52 (1924); *Porter Auto Co. v. First Nat'l Bank,* 185 Iowa 844, 848, 171 N.W. 121, 122 (1919). The key is whether this setoff was "improper" for purposes of establishing the plaintiffs' claim of intentional interference with a contract. *See, e.g., Wilkin Elevator v. Bennett State Bank,* 522 N.W.2d 57, 62 (Iowa 1994); *Nesler v. Fisher & Co.,* 452 N.W.2d 191, 198 (Iowa 1990).

The plaintiffs rely on the proposition that offset rights are still subject to "equitable principles," citing *Olsen v. Harlan National Bank,* 162 N.W.2d 755, 760 (Iowa 1968). That case, however, is clearly distinguishable. It involved a bank's attempted offset against a depositor for a debt owed by a third party to whom the depositor owed money. We held it could not. *Id.* at 761–62.

■ We do not believe that a bank must investigate the source of the funds of its depositor against which it exercises its right of setoff. None of the cases cited above suggest that, and the practical implication would be significant if the bank were required to trace the source of the deposits when they are not identified as separate funds.

■ The elements of intentional interference with a contract are:
1. The plaintiff had a contract with [name of third person].
2. The defendant knew of the contract.
3. The defendant intentionally and improperly interfered with the contract.
4. The interference caused the third person not to perform the contract.
5. The interference caused the plaintiff's performance of the contract to be more burdensome or expensive.
6. The amount of damages.

*Nesler,* 452 N.W.2d at 198.

■ Loss of the plaintiffs' funds was, unfortunately, a fallout from the bank's exercise of its legal rights of setoff; but the fact that the bank acted intentionally in seizing these assets does not make it "improper" for purposes of intentional interference with a contract. As the Restatement explains:

> Intent alone ... may not be sufficient to make the interference improper, especially when it is supplied by the actor's knowledge that the interference was a necessary consequence of his conduct rather than by his desire to bring it about. In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations. If this was the sole motive the interference is almost certain to be held improper.
>
> ... [I]f there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional, but the factor of motive carries little weight toward producing a determination that the interference was improper.

Restatement (Second) of Torts § 767 cmt. d.

In *Wilkin Elevator,* 522 N.W.2d at 62, an analogous case, a feed store had an agreement with the bank to allow it the right of setoff. The bank exercised the right and caused the debtor to be unable to perform its contracts with its customers. We said:

> Even when the summary judgment papers are viewed most favorably to the [bank customers], as they must be, there is no evidence that would permit a rational finder of fact to conclude that the bank's predominant purpose was to injure or destroy the feed store.

■ As we noted in *Wilkin Elevator,* other recent cases have determined that a party does not improperly interfere with another's contract by exercising its own legal rights in protection of its own financial interests. *Id.*

We conclude that there was no evidence of a predominant purpose of causing injury to the plaintiffs, and the district court erred in

not granting a directed verdict on the intentional interference claim. Accordingly, we vacate the court of appeals decision and reverse the district court judgment.

As previously noted, the plaintiffs also asserted a constructive trust theory, which the trial court deemed to be moot in view of the fact that a judgment had been entered for the plaintiffs on their interference-with-a-contract claim. The constructive trust issue must still be resolved, in the light of our decision in this case, and we accordingly remand the case for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED WITH INSTRUCTIONS.**