Denny BERGER, David Brezina, Calvin Dostal, Stanley Dostal, Dennis Gienger, Gary Hanus, Stanley Hanus, Ada Krutzfeldt, Emma Kubik, Ray Kubik, Bruce Morrison, Sash Farms Company, Kenneth Strohbehn, Harold Vorba, Evan Wilson, Paul Wobeter, and Pete Wobeter, Appellees,

v.

CAS' FEED STORE, INC., Defendant,

and

Farmers Savings Bank & Trust–Traer, Appellant.

No. 96–1723.

Supreme Court of Iowa.

April 22, 1998.

Eugene J. Kopecky and Karen A. Volz of Ackley, Kopecky & Kingery, Cedar Rapids, for appellant.

James C. Ellefson and James L. Goodman of Harrison, Brennecke, Moore, Smaha & McKibben, Marshalltown, for appellees.

Christina L. Gault, Iowa Farm Bureau Federation, West Des Moines, for amicus curiae Iowa Farm Bureau Federation.

Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for amicus curiae Iowa Bankers Association.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal is before us following a remand ordered in *Berger v. Cas' Feed Store, Inc.*, 543 N.W.2d 597 (Iowa 1996) [hereinafter *Berger I* ]. The controversy stems from the insolvency of Cas' Feed Store, Inc., and losses suffered by its farm customers when agricultural products—prepaid by the farmers—were not delivered in the spring of 1992. In *Berger I* we concluded that Cas' Feed's banker—defendant Farmers Savings Bank & Trust—could not be held liable to the farmers on a theory of intentional interference with contract for applying roughly $130,000 in Cas' savings account toward delinquent bank loans. *Berger*, 543 N.W.2d at 599. We remanded to the district court for ruling on

the farmers' remaining equitable claim of constructive trust. *Id.*

On remand, the district court concluded that the bank's conduct "improved the bank's position at the expense of the farmers," warranting the imposition of a constructive trust in favor of the farmers and against the bank. Our review of the district court's equitable ruling is de novo. *Huston v. Exchange Bank,* 376 N.W.2d 624, 626 (Iowa 1985). Because the record reveals arm's-length commercial transactions between Cas' Feed and its customers—and not fiduciary or agency relationships—there is no legal basis for impressing a trust on the Cas' account seized pursuant to the bank's right of set-off. Accordingly, we reverse the judgment of the district court and remand for dismissal of the plaintiffs' claim.

I. We recently outlined the principles governing constructive trusts in *Benson v. Richardson,* stating:

A constructive trust is an equitable remedy courts apply to provide restitution and prevent unjust enrichment. *Regal Ins. Co. v. Summit Guar. Corp.,* 324 N.W.2d 697, 704 (Iowa 1982). A constructive trust is a remedial device under which the holder of legal title to property is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest. *Id.* at 704–05 (quoting *Loschen v. Clark,* 256 Iowa 413, 419, 127 N.W.2d 600, 603 (1964)). Three types of constructive trusts exist: (1) those arising from actual fraud; (2) those arising from constructive fraud; and (3) those based on equitable principles other than fraud. *Regal Ins.,* 324 N.W.2d at 705.

*Benson v. Richardson,* 537 N.W.2d 748, 760 (Iowa 1995). In *Benson* we concluded plaintiff investors established their right to a constructive trust where the record demonstrated that defendant fraudulently placed invested funds in his wife's personal account, effectively beyond the investors' reach. *Id.* By contrast, we found no basis for imposing a constructive trust in *In re Estate of Peck,* 497 N.W.2d 889, 890 (Iowa 1993), where a husband inherited assets from his wife which, prior to her death, had been the subject of a contested but unresolved action for dissolution of marriage. The wife's heirs, conceding no actual or constructive fraud on the husband's part, nevertheless claimed he was unjustly enriched by her untimely death. *Peck,* 497 N.W.2d at 890. We found no "injustice" in the husband's continued ownership of marital assets, noting that "[i]f mere wishes or expectations of a party may provide the basis for an unjust enrichment claim, the potential for using constructive trusts is virtually unlimited." *Id.*

■ Circumstances justifying imposition of a constructive trust based on other than fraud include

bad faith, duress, coercion, undue influence, abuse of confidence, or any form of unconscionable conduct or questionable means by which one obtains the legal right to property which they should not in equity and good conscience hold. 76 Am. Jur.2d *Trusts* § 201 at 227–30 (1992); *see Loschen v. Clark,* 256 Iowa 413, 420–21, 127 N.W.2d 600, 603–04 (Iowa 1964) (holding although no fraud existed, a constructive trust was created when defendant, who held legal title to a farm repudiated an oral obligation to make monthly payments to plaintiff, who had furnished the purchase price of the farm). One seeking the remedy must establish the right by clear, convincing, and satisfactory evidence. *Id.* (citing *Copeland v. Voge,* 237 Iowa 102, 107, 20 N.W.2d 2, 5 (1945)).

*In re Estate of Welch,* 534 N.W.2d 109, 111–12 (Iowa App.1995). In *Welch,* the court of appeals imposed a constructive trust in favor of a child on a record establishing that the decedent's wife of eight months had exercised undue influence to obtain title to the decedent's property. *Id.* at 113.

■ II. Applying constructive trust principles in the present case is complicated by the fact that *both* parties can make good-faith claims to cash held in Cas' Feed accounts in the spring of 1992. The record reveals that from November 1991 through March 1992, each of the seventeen plaintiff-farmers made prepayments to Cas' Feed in sums ranging from $1100 to $10,000 for agricultural chemicals and fertilizer to be delivered in time for spring planting. There can be no doubt these prepayments were motivated by end-

of-the-year tax benefits and preseason purchase discounts. Yet it is equally evident that the farmers' confidence in the prepayment system stemmed from having done business this way with Cas' Feed for many years without adverse consequences.

By the same token, Cas' Feed owed the bank more than $600,000 on unpaid and delinquent promissory notes when the bank seized its deposits in mid-March 1992. Clearly the bank knew that some, if not all, of the funds in the store's savings account were customer prepayments. *Berger*, 543 N.W.2d at 598. It is likewise clear these funds were not held in trust, nor segregated in an account identified as a prepayment fund held for the benefit of these customers. *Id.; see State v. Caslavka*, 531 N.W.2d 102, 105 (Iowa 1995) (reversing Lon Caslavka's conviction for theft by misappropriation because funds in feed store account held, not as agent for customers, but for purchase of goods for resale at profit). Thus we recognized in *Berger I* that the bank's general right of set-off against these funds was legal, not improper.[1] *Berger*, 543 N.W.2d at 599.

Despite our finding that the bank's exercise of its right of set-off was legal and proper, the district court on remand nevertheless invoked equity to set the funds aside for the benefit of Cas' customers. The court reasoned that the bank's knowledge of agribusiness cycles and forty-year lending relationship with Cas' Feed made it aware that the feed store's accounts would be inflated by customers' prepayment money during the time period relevant here. Relying heavily on *Cable v. Iowa State Savings Bank*, 197 Iowa 393, 194 N.W. 957 (1923), the district court found—and the plaintiffs urge on appeal—the bank enjoyed a windfall to which it was not justly entitled.

We are convinced the district court's reliance on *Cable* is misplaced. *Cable* involved a brokered sale of cattle resulting in a deposit of $7561 in sale proceeds to the broker's account. When the broker subsequently wrote a check to the seller for the sale proceeds less his commission, the bank refused to honor the check, asserting the broker's account was overdrawn due to a withdrawal by the bank for payment on a delinquent bank note. On the seller's appeal, we found that the broker held the sale proceeds *in trust* for the seller, and the bank, "having notice of the *trust character* of the fund, did not have a right to thus appropriate it." *Cable*, 197 Iowa at 400, 194 N.W. at 961 (emphasis added).

The district court cited *Cable* for the general proposition that "a bank's general knowledge of a long-time customer's business practices ... gave the bank knowledge of the fact that money in a particular account did not belong to the bank's customer, but belonged to third parties." In drawing this conclusion, however, the court mistakenly equated the agency relationship established in *Cable* with the purely arm's-length commercial transactions at issue here.[2] The distinction was made plain in the unsuccessful criminal case brought against Lon Caslavka, owner of Cas' Feed. There we rejected the State's attempt to characterize an unconditional transfer of funds from a buyer to a seller of goods as a transfer in trust. *Caslavka*, 531 N.W.2d at 105. Pertinent to the precise facts before us, we said:

> [T]he State attempted to establish a trust predicated on the fact that the monies

---

1. The right of set-off exercised by the bank rested on the following language in Cas' Feed's loan agreement:

   You have the right to set-off any amount I owe you under this note against any right I have to receive money from you. If my right to receive money from you is owned by someone else not paying this note, your set-off can only reach funds I could have reached with my own request or endorsement. Your right of set-off does not extend to accounts where my rights are only as a fiduciary. It also does not extend to my IRA or other tax-deferred retirement account.

   Your right of set-off applies without your first telling me you are going to use it. It applies no matter what sort or value of collateral is on this loan. It also applies no matter who else has agreed to pay this note.

2. At the outset of the *Cable* opinion, the court put the decision in context by citing the following "well-settled" law:

   [T]itle to property consigned to a factor or commission merchant for sale remains in the consignor, and that such factor or commission merchant holds the proceeds derived from the sale of such property in a fiduciary or trust capacity, and that its character is not changed by being placed to his credit in the bank. *Cable*, 197 Iowa at 396, 194 N.W. at 959.

were tendered to the defendant to secure a performance that required him to purchase specific products on the customers' behalf. Our review of the record does not support the claim that defendant purchased or agreed to purchase agricultural products as the customers' agent. The defendant purchased or agreed to purchase these products in his own name and resell them to his customers for a profit.... [T]his type of transaction gives rise to a contractual relationship rather than a trust relationship.

*Id.*

Striving to uphold the district court's ruling, plaintiffs urge strenuously that the bank set a trap for these farmers whose very business served the bank's interest of keeping Cas' Feed afloat while a sale of the store was being negotiated. When the sale negotiations fell apart, however, the farmers were in no worse position than the bank. The bank, in good faith, had extended time to Cas' Feed to make good on its loans. So also the farmers had, in good faith, prepaid their spring planting supplies, anticipating delivery when needed. These transactions involved knowledgeable and experienced business persons, each acting in their own best interests. The deals went sour for all concerned. But the bank's loans to Cas' Feed were secured whereas the farmers' were not.

Contrary to the district court's finding, we do not believe the record shows by clear, satisfactory, and convincing proof that the bank enriched itself inequitably or unconscionably at plaintiffs' expense. It was not unconscionable conduct by the bank, but unconscionable conduct by Cas' Feed, that led to the farmers' loss. Their unsecured position—while regrettable—was preventable and cannot, standing alone, justify impressing a constructive trust on funds seized by the bank. Accordingly, we reverse the judgment of the district court and remand for entry of dismissal of the plaintiffs' claim against Farmers Savings Bank & Trust.

**REVERSED AND REMANDED.**