**Tony C. PETERSEN and Mary E. Petersen, Debtors.**

**No. 01–02456S.**

United States Bankruptcy Court, N.D. Iowa, Western Division.

Feb. 7, 2002.

Donald H. Molstad, Sioux City, IA, for Petersens.

Harold D. Dawson, Sibley, IA, for Dorothy J. Silvrants.

Wil L. Forker, Sioux City, IA, trustee.

## DECISION RE: OBJECTION TO EXEMPTION BY DOROTHY J. SILVRANTS TESTAMENTARY TRUST

WILLIAM L. EDMONDS, Bankruptcy Judge.

Neil Frederickson, as Personal Representative for the Dorothy J. Silvrants Testamentary Trust (hereinafter "Trust") ob-

jects to debtors' claim of exemption in real estate described as debtors' homestead. Trial took place December 18, 2001 in Sioux City. Harold D. Dawson appeared as attorney for Trust. Donald H. Molstad appeared as attorney for the debtors, Tony C. and Mary E. Petersen. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Tony and Mary Petersen, husband and wife, filed their joint chapter 7 petition on July 10, 2001. They listed in their schedules real estate described as:

> The East 622.23 feet of the North 350 feet of the Northwest Quarter of Section 9, Township 99 North, Range 37 West of the 5th P.M., Dickinson County, Iowa; the tract contains 5.00 acres inclusive of 0.47 acres of easement for county road on the North side thereoft [sic].

Petersens claimed the real estate exempt as their homestead under Iowa Code §§ 561.2 and 561.16.

Trust objected to the claim. At the time of filing, Trust had a pending claim in Iowa District Court asking for the imposition in its favor of a constructive trust or equitable lien against the property. Trust contends that because of its claim, debtors should not be able to exempt an interest in the real estate.

### Findings of Fact

Petersens purchased the real estate in 1996. The property contained five acres, three of which were being farmed, and an old two-story farmhouse. The house needed a new foundation. Petersens wanted to have the house enlarged and the foundation repaired. The late Dorothy Silvrants was Mary Petersen's mother. The two discussed the Petersens' project. Mrs. Silvrants suggested that the couple construct a new home on the location of the old one. She offered to finance the construction. Mary Petersen says there was no written or verbal agreement with her mother re-

garding repayment of the money spent on the construction by her mother. She says the couple would not have been able to afford the construction. Mary Petersen believed that she would not have to repay her mother.

Petersens got estimates on the construction costs. Mary Petersen believed the new home would cost $150,000.00. Petersens decided that they would do as much of the work as they could in order to save money. Mary Petersen and Dorothy Silvrants visited the bank which held a mortgage against Petersens' property. The mortgage debt at the time was approximately $60,000.00. The bank was concerned about the impairment of its mortgage interest because of the proposed removal of the existing farmhouse from the property. The banker asked Mrs. Silvrants to guarantee Petersens' mortgage debt. She did so. She also may have signed a statement that she would be responsible for payment of construction costs on the new house.

Within the next six weeks, Petersens sold the old farmhouse, and it was moved off the acreage. Construction began. Silvrants paid the accruing construction costs. Some bills were sent directly to her; other bills were passed along to her by Mary Petersen.

At some point, the construction became a financial problem. Silvrants decided either that she could not or that she would not put any more money into the project. Silvrants was sued directly by some unpaid contractors and material suppliers. Contractors and materialmen filed mechanic's liens against the property. Silvrants paid off some of these creditors and took assignments of the liens. Farmers Cooperative Elevator Company from Ruthven, Iowa sued the Petersens and various lienholders to foreclose its claim against the property. Silvrants intervened in the action. Other creditors may have obtained liens against property in Spirit Lake owned by Silvrants.

Silvrants and Petersens were at odds. Sometime in 1999, they began discussing a settlement that would resolve the claims against the Petersens' property and the dispute between themselves. Silvrants was represented by two attorneys—William T. Hedeen of Worthington, Minnesota and Daniel E. DeKoter of Sibley, Iowa. Petersens were represented by David L. Reinschmidt of Sioux City.

Silvrants and Petersens reached a settlement in November 1999. The agreement also involved settlement of the action brought by the Farmers Cooperative by a payment to the Coop of $80,000.00. Silvrants would pay $43,500.00 of that amount, and Petersens would pay the remaining $36,500.00. Also, Silvrants agreed that she would release the mechanic's liens that had been assigned to her. Petersens agreed that they would pay any other liens and judgments against the property. Silvrants and the Petersens would exchange mutual releases of claims against one another.

It was further agreed that Petersens would list their property for sale, and that they would accept any reasonable offer of at least $187,000.00 for the property. Petersens agreed to list the home for sale on or before April 1, 2000. Out of the proceeds of sale, Petersens agreed to pay Silvrants $33,750.00. They agreed to sign a promissory note to Silvrants for that amount. If Petersens paid Silvrants the amount due on or before April 1, 2000, they would not be obligated to list or to sell the property. The paragraph in the settlement agreement requiring the sale of the property stated the following:

4. In exchange for Dorothy Silvrants' $43,500 payment, the Petersens agree that on or before April 1, 2000, they will

list the home . . . for sale. They further agree to accept any reasonable offer for fair market value should the house not sell on or before. A reasonable offer shall be deemed to be an offer equaling or exceeding the appraisal performed upon the real estate on May 28, 1999, which set forth a value of $187,000.00. The Petersens shall not be obligated to either list or sell the home if they have paid Dorothy Silvrants the payment set forth in paragraph # 6 below on or before April 1, 2000.

Exhibit 2. Paragraph # 6 stated that:

Upon the closing of the home . . ., Dorothy Silvrants shall be paid at the closing Thirty-three Thousand Seven Hundred Fifty Dollars ($33,750.00). The Petersens agree to execute a promissory note to evidence their obligation to repay this $33,750.00. Upon this 33,750.00 payment to Dorothy Silvrants, Dorothy Silvrants and the Petersen's [sic] shall execute mutual releases.

Exhibit 2.

Silvrants' attorneys discussed the settlement in correspondence exchanged in October 1999. Hedeen and DeKoter agreed that Silvrants should get a second mortgage against the property to secure the note from Petersens. They were concerned that Petersens intended to file bankruptcy and that if they did, Silvrants' claim against Petersens would be unsecured and discharged.

Reinschmidt wrote to Hedeen on October 6, 1999, advising him that Mary Petersen and Dorothy Silvrants had talked and had agreed that a mortgage was not necessary. Petersens were concerned that if they encumbered the property with a mortgage to Silvrants, they could not refinance their mortgage. They intended to obtain the money they needed to effectuate the settlement by refinancing their mortgage debt against the home. The settlement agreement, drafted by Reinschmidt, did not provide for a mortgage to Silvrants. On October 14, 1999, DeKoter wrote Hedeen that he would not concur with any settlement that did not provide a mortgage from Petersens to Silvrants. Hedeen wrote to Silvrants on October 20, 1999, recommending that she not accept the agreement in its then-present form (Exhibit F).

In seven numbered paragraphs, Hedeen advised Silvrants as to the weaknesses of the agreement and of potential problems concerning its performance by Petersens. I will quote two paragraphs in particular:

1. There is no security for the $33,750.00 which you are to receive out of house sale proceeds. As a minimum there should be a note secured by a second mortgage on the property so that you have some control over the future disposition of the property and the repayment to you of the agreed amount.

2. Based on information developed during the course of this matter, it appears that both Mr. and Mrs. Petersen are presently insolvent. By filing bankruptcy (which is a very real possibility) they will effectively discharge the debt owing to you and there will be no recourse available.

Exhibit F.

Nothing was added to the proposed settlement agreement to provide a mortgage to Silvrants. She signed the agreement on November 1, 1999; Petersens signed it on November 22, 1999 (Exhibit 2). On or about November 16, 1999, Petersens signed a promissory note to Silvrants promising to pay her $33,750.00 in principal and $100.00 in interest on January 1, 2001.

Silvrants died on November 25, 1999 at the age of 76. Her will created the Dorothy J. Silvrants Testamentary Trust. The

promissory note was assigned to the Trust. Petersens filed their bankruptcy petition July 10, 2001. They had put the house on the market in May 2001. They moved from the property in August 2001. The property has not yet been sold. The Trust, by its personal representative, filed a civil action against the Petersens in the Iowa District Court for Dickinson County asking that a constructive trust or equitable lien be established against the property in its favor.

### Discussion

■ The Trust now asks this court to recognize a constructive trust or equitable lien in its favor on the property. It argues that the Petersens would be unjustly enriched if they were allowed to keep the equity in their homestead free of the Trust's claim.

■ A constructive trust is "an equitable remedy courts apply to provide restitution and prevent unjust enrichment.... A constructive trust is a remedial device under which the holder of legal title to property is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Berger v. Cas' Feed Store, Inc.*, 577 N.W.2d 631, 632 (Iowa 1998); *accord Regal Insurance Co. v. Summit Guaranty Corp.*, 324 N.W.2d 697, 704–05 (Iowa 1982).

■ An equitable lien is "a right not recognized at law, to have a fund or a specific property, or its proceeds, applied in whole or in part to the payment of a particular debt or class of debts.... The equitable lien is said to be a restitution concept applied by courts of equity to avoid injustice and particularly to avoid unjust enrichment." *Tubbs v. United Central Bank, N.A.*, 451 N.W.2d 177, 185 (Iowa 1990). Equitable liens and constructive trusts are remedial alternatives. *Matter of Receivership of Hollingsworth*, 386 N.W.2d 93, 96 (Iowa 1986). *See also* Robert A. Hillman, *Contract Remedies, Equity, and Restitution in Iowa*, § 3.3(B) (1979) (grounds for either remedy are similar; equitable lien gives the plaintiff a security interest, constructive trust makes plaintiff the beneficial owner of the property).

■ The imposition of a constructive trust on a bankruptcy debtor's property gives the true owner an equitable interest superior to that of the debtor or trustee. *N.S. Garrott & Sons v. Union Planters National Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 467 (8th Cir.1985). Only the property interest that remains with the debtor becomes property of the bankruptcy estate. *Id.* The existence of an equitable lien would have a similar effect. The property subject to the lien would not come into the bankruptcy estate to the extent of the creditor's interest in the property. 11 U.S.C. § 541(d).

The removal of property from the estate conflicts with the bankruptcy principle of equitable distribution for all creditors. For this reason, the Sixth Circuit has concluded that, before a bankruptcy court may recognize a constructive trust, there must have been a pre-petition judicial decision creating the trust, whether or not the court used that term. *McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 196–97 (6th Cir.1996); *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir.1994).

In *In re N.S. Garrott & Sons*, 772 F.2d at 467, the Eighth Circuit determined that a fund of money did not become property of the debtor's estate because, under Arkansas law, a state court would have recognized a constructive trust on the fund.

In *Chiu v. Wong*, 16 F.3d 306 (8th Cir. 1994), the court applied Minnesota law. Because the debtor had used the proceeds

of converted property to purchase her homestead, the creditor was entitled to enforce a constructive trust in the homestead. The property did not become property of the bankruptcy estate to the extent it was purchased with the proceeds of converted funds.

Thus, a bankruptcy court may determine whether, under equitable principles of state law, the creditor's claimed interest ever became property of the estate. This court will examine whether Iowa law would recognize, for the Trust's benefit, a pre-petition property interest in the Petersens' homestead under constructive trust or equitable lien theories.

▮ There are three categories of constructive trusts: those arising from actual fraud, those arising from constructive fraud, and those based on equitable principles other than fraud. *Berger v. Cas' Feed Store*, 577 N.W.2d at 632. The party seeking the remedy must establish the right by "clear, convincing, and satisfactory evidence." *Id.*

▮ There has been no allegation of fraud by the Petersens. The Trust must establish its right to an equitable remedy on the basis of other equitable principles.

Circumstances justifying imposition of a constructive trust based on other than fraud include bad faith, duress, coercion, undue influence, abuse of confidence, or any form of unconscionable conduct or questionable means by which one obtains the legal right to property which they should not in equity and good conscience hold.

*Id.*

A few Iowa decisions have recognized a constructive trust in the absence of fraud. In *Loschen v. Clark*, 256 Iowa 413, 127 N.W.2d 600 (1964), plaintiff, an elderly man, gave his daughter and son-in-law money for the purchase of a farm. In return, they agreed to pay him $30 per month as long as he lived. The son-in-law later denied liability to continue the payments. A significant fact in the case was that the parties' agreement was treated as one for the support of an elderly parent. The court affirmed that a constructive trust was created in favor of plaintiff, who was entitled to elect reconveyance of the farm.

In *Matter of Chapman's Estate*, 239 N.W.2d 869 (Iowa 1976), a husband and wife made a joint and mutual will. After the wife's death, the husband revoked the will. The court imposed a constructive trust on all of the husband's property in favor of the beneficiaries of the prior will.

▮ The Trust argues that Petersens will be unjustly enriched if they are allowed to exempt the equity in their homestead, because Silvrants provided substantial funds for construction of the house. The Trust is correct that a constructive trust or equitable lien may be an appropriate remedy against unjust enrichment. *Loschen v. Clark*, 127 N.W.2d at 603. The Trust has not shown, however, that Petersens have been unjustly enriched. Petersens received money from Silvrants for construction of their house; consequently, they owed debt to her. The parties settled all claims between themselves by agreement. Silvrants was aware that her agreement did not give her a mortgage in the homestead property. She was aware of the risk of bankruptcy. Although the Trust claims that Silvrants signed the settlement agreement under pressure, it has not shown by clear and convincing evidence that she signed under duress or coercion. She was represented by counsel who advised against accepting the agreement. Petersens believed that a second mortgage would make it more difficult for them to obtain financing to pay the debts required by the settlement agreement.

Silvrants was aware of their concern. She voluntarily signed the settlement agreement after being advised of the risks. Any injustice under these circumstances is not the result of any wrongful conduct on the part of the Petersens. It is the result of the bankruptcy discharge, which Silvrants knowingly risked despite the advice of counsel.

■ The principle of unjust enrichment does not give a court a "roving mandate" to adjust every perceived unfairness that occurs in personal relationships. *Atkinson v. Atkinson (Matter of the Estate of Atkinson)*, 1999 WL 823564 at *2 (Iowa App.1999) (quoting *Slocum v. Hammond*, 346 N.W.2d 485, 491–92 (Iowa 1984)). Iowa courts seem especially reluctant to find "unjust enrichment" when parties have voluntarily placed themselves in a situation or have failed to take action to put themselves in a better situation. *See West Branch State Bank v. Gates*, 477 N.W.2d 848, 852 (Iowa 1991) (debtor gratuitously transferred grain bin to brother; not unjust enrichment to permit foreclosure of remaining collateral); *Estate of Atkinson*, 1999 WL 823564 at *3 (woman took no action to establish interest in house despite knowing deed was not in her name and titleholder had not divorced his wife).

The cases cited by the Trust are not factually similar to the Petersens' case. In one, the court applied the principle of unjust enrichment to establish liability for debt, a fact not at issue here. *Credit Bureau Enterprises, Inc. v. Pelo*, 608 N.W.2d 20 (Iowa 2000) (patient involuntarily committed to hospital was liable to pay for mental health services received).

The Trust cites *Tubbs v. United Central Bank, N.A.*, 451 N.W.2d 177 (Iowa 1990) for the proposition that a constructive trust may arise by contract. The *Tubbs* case is a factually complicated history of the demise of an unregulated bank, Exchange Bank. The owners operated the bank for their own benefit for many years and, through various means, hid its insolvent condition. Eleven days before the bank was put into receivership, another bank, UCB, recorded a mortgage on 4500 acres of farmland owned by Exchange Bank's owners. The evidence supported the finding of an equitable lien on the farmland for the benefit of the failed bank's depositors under an "express contract theory." 451 N.W.2d at 185.

Over the years, Exchange Bank's owners had made public statements and had recorded notices that the bank's deposits would be backed by their property, including the farmland. The purpose of these notices was to assure customers that their deposits were safe, even though they were not covered by federal deposit insurance. *Id.* Moreover, the court held that the lien had priority over UCB's mortgage, because UCB had actual knowledge that the land had been pledged for the security of the Exchange Bank's customers. *Id.*

In the *Tubbs* case, the bank's depositors did not have an opportunity to bargain for security. In contrast, Silvrants specifically considered whether she would insist upon a mortgage. She did not do so. This court should not now improve her bargain by providing security that she herself knowingly elected not to take.

■ In its brief, the Trust claims for the first time that it is entitled to be equitably subrogated to the rights of creditors whose claims Silvrants paid. The court will assume that Silvrants could have had a right of subrogation for payment of debt to the Farmers Coop and the claims of contractors and materialmen. It seems, however, that she waived any such right by settling with Petersens. Silvrants had already taken assignments of certain me-

chanic's liens. She agreed to release the liens. She did not insist upon a mortgage to secure her claim. The settlement agreement shows an intent to release all claims against the property. The court concludes that the Trust is not entitled to any relief on the basis of equitable subrogation.

IT IS ORDERED that the objection of the Dorothy Silvrants' Testamentary Trust is overruled.